Opinion of the Court

UNITED STATES, Appellant,

v.

Gregory L. DARVILLE, Boiler Techni-
cian Fireman, U.S. Navy, Appellee.

No. 34,342.

NCM 77-0950.

U. S. Court of Military Appeals.

May 1, 1978.

Lieutenant Vance J. Bettis, JAGC, USN,
argued the cause for Appellee, Accused.
With him on the brief was Captain A. W.
Eoff, II, JAGC, USN.

Captain Christopher Miller Klein, USMC,
argued the cause for Appellant, United
States. With him on the brief was Lieuten-
ant Commander N. P. DeCarlo, JAGC,
USN.

COOK, Judge:

Pursuant to his pleas the appellant was
convicted by a special court-martial, consist-
ing of a military judge alone, of absence
without authority (four specifications), in
violation of Article 86, Uniform Code of
Military Justice, 10 U.S.C. § 886. He was
sentenced to a bad-conduct discharge, con-
finement at hard labor for 30 days, and
reduction to E–1. The convening authority
approved the findings and sentence. The
United States Navy Court of Military Re-
view affirmed the findings and so much of
the sentence as extends to confinement at
hard labor for 30 days, reduction to E–1,
and a bad-conduct discharge suspended for
a period of six months from a specific date.
Pursuant to Article 67(b)(2), UCMJ, 10
U.S.C. § 867(b)(2), the Judge Advocate Gen-
eral of the Navy has certified the following
issue:

Did the United States Navy Court of
Military Review exceed its authority
when it acted to suspend the execution of
the bad-conduct discharge in this case?

The Court recently had before it the iden-
tical issue in United States v. Scott, 4 M.J.
205 (C.M.A.1978), but found it unnecessary
to resolve it because the Court of Military
Review acted only to clarify an ambiguity
in the convening authority's action. Thus,
the Court concluded that "the Court of Mili-
tary Review did not purport to exercise its
own authority to suspend the discharge."
Id. at 206. Here, however, there is no am-
biguity in the convening authority's action,
and the issue is squarely presented.

As early as United States v. Simmons, 2
U.S.C.M.A. 105, 6 C.M.R. 105 (1952), this
Court held that a Board of Review (now
Court of Military Review) had no power to
suspend a sentence. Citing Ex parte Unit-
ed States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed.
129 (1916), the Court noted there was no
inherent power in the Judicial Branch of
the Government to suspend a sentence and
observed:

**2**

If Congress had intended to alter this prior consistent policy in relation to the sentence powers of a board of review, it seems to us that it would have done so in express language. This failure to confer the power expressly, appears in the light of historical development of military criminal law, to be even more persuasive that Congress did not intend to grant it or at least overlooked making such grant. Indeed, by Article 71 of the Code, supra, Congress has continued the previous pattern of limiting the power of suspension to The President, to the Secretary of the Department, and the convening authority, who may order the sentence executed. Concededly, it is anomalous that a board of review can remit a punitive discharge entirely but is powerless to suspend it under a probationary guarantee of continued good behavior.

*United States v. Simmons, supra* at 108, 6 C.M.R. at 108. *Accord United States v. Woods,* 12 U.S.C.M.A. 61, 30 C.M.R. 61 (1960); *United States v. Cavallaro,* 3 U.S.C. M.A. 653, 14 C.M.R. 71 (1954).

Recently in *United States v. Occhi,* 2 M.J. 60 (C.M.A.1976), the Court held that a trial judge did not have the power to suspend a sentence. Citing *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955) and *Ex parte United States, supra,* we observed that the powers of suspension and probation were entrusted to the Legislative and Executive Branches of the Government under the Constitution. Furthermore, the Court had previously held that a court-martial could not suspend a sentence (*United States v. Marshall,* 2 U.S.C.M.A. 342, 8 C.M.R. 142 (1953)), and Congress, while addressing the area of sentencing powers in the Military Justice Act of 1968,[1] did not act to modify the Court's ruling. Thus, the Court reasoned that Congress had accepted the prior judicial construction of the statute. *See United States v. Washington,* 1 M.J. 473 (C.M.A.1976). Finally, we noted that while Articles 71 and 74, UCMJ, 10 U.S.C. §§ 871 and 874, empower numerous officials to suspend sentences, the military judge's part was conspicuously omitted.

The reasons set forth in *Occhi* are equally applicable to a Court of Military Review. Although Congress amended Article 66, UCMJ, 10 U.S.C. § 866, in the Military Justice Act of 1968, that amendment did not modify the authority of that intermediate appellate body to act upon the findings and sentence. Article 66(c), which sets forth the power of the appellate court, has remained unchanged since its original enactment,[2] except for the substitution of "Court of Military Review" for "Board of Review," and the word "may" for the word "shall." The first mentioned substitution was effected by the Military Justice Act of 1968 to reflect the change in the name of the intermediate appellate body, and the legislative history of that Act clearly reflects that such modification was only a technical change in the name, with no change in substance intended. *See* 114 Cong.Rec. 29398, 29402 (1968); 3 U.S.Code Cong. & Admin.News, 90th Cong., 2d Sess., pp. 4503, 4515 (1968).

The second change was effected when the Uniform Code of Military Justice was enacted into law as part of Title 10, United States Code.[3] That statute was a codification bill which made no substantive changes. As to the nature of that bill, Senator O'Mahoney observed the following in explaining the bill before the Senate:

Mr. President, I wish it clearly understood that no change of substantive law is included in this measure. It is a codification—that is to say, a restatement—of all the Armed Forces statutes, beginning with the earliest enactments the committee could find, and extending to modern times. No new law has been written into this measure; it is simply a restatement of existing law, with the elimination of laws which have become obsolete because the conditions to which they applied no longer exist, and changes of words made necessary in order to make the meaning clear.

1. P.L. 90–632, 82 Stat. 1335.

2. 64 Stat. 128 (1950).

3. 70A Stat. 59 (1956).

As an added safeguard, section 49 of the bill specifically states that it is the legislative purpose of the bill to restate the existing law without changing it in substance. So this provision by its terms and its necessary interpretation makes it impossible to construe anything in this measure as a substantive change of law. It expresses the well-established principle of statutory interpretation that a codification bill is a continuation of the source law, without substantive change, except where Congress clearly shows intent to do otherwise. The committee report reaffirms the fact that no substantive change is intended.

102 Cong.Rec. 13944 (1956).

Senator Wiley echoed these words with the following remarks:

[The committee] concluded that, although military in character, H.R. 7049 had been prepared under proper civilian and professional safeguards, that it accurately reflects presently existing military law, and that there is no reason to fear that any substantive change has been made.

. . . . .

It merely restates in orderly form the existing law with reference to the military services, which is now difficult to find. If the bill is not now passed, the process would have to be done all over again. I urge the bill's immediate enactment.

Id. at 13952–53. Both the House Report to the statute and Senate Report No. 2484 contain specific statements that there was no intent to make substantive changes by the codification. See 3 U.S.Code Cong. & Admin.News, 84th Cong., 2d Sess., pp. 4620–22, 4640–42 (1956). Various changes were made to reflect "modern usage and the best methods of legislative drafting." Id. at 4621, 4641. Accordingly, there was no substantive change in Article 66(c) by the substitution of the word "may" for "shall," and our decision in United States v. Simmons, supra, has never been modified by Congress. The Court of Military Review is a judicial body which has no inherent power to suspend sentences, and Articles 71 and 74, UCMJ, do not so empower it.

The accused cites United States v. Glaze, 22 U.S.C.M.A. 230, 46 C.M.R. 230 (1973); United States v. Cox, 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972); and United States v. Estill, 9 U.S.C.M.A. 458, 26 C.M.R. 238 (1958), for authority that the Courts of Military Review are empowered to suspend sentences. However, in Glaze and Estill, the Court held that appellate tribunals could only modify the period and terms of an authorized suspension, not that it could suspend the sentence itself. In Cox, the Court held a Court of Military Review could order that a sentence be suspended where the convening authority was obligated to suspend a sentence under the terms of a pretrial agreement. However, Cox was not predicated on the basis that the Court of Military Review was empowered to suspend a sentence. The Court held that the Court of Military Review could, itself, give legal effect to a pretrial agreement that the convening authority was bound to respect but had not. Accord, United States v. Scott, supra.

Accordingly, we reaffirm that a Court of Military Review has no independent power to suspend a sentence. The decision of the United States Navy Court of Military Review is reversed as to the sentence and the record of trial is returned to that court for reconsideration of the sentence in light of this opinion.

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring):

I generally agree with the reasoning and the result of the majority opinion with only slight exceptions not relevant to the disposition of the present case. I do not equate the potential power of the military trial judge to suspend a sentence with the absence of such power in the Courts of Military Review. See United States v. Occhi, 2 M.J. 60, 64 (C.M.A.1976) (Fletcher, C. J., concurring in the result.