UNITED STATES, Appellee,

v.

Allan D. CLARK, Machinist's Mate
Second Class, U.S. Navy,
Appellant.

No. 44900.

NMCM No. 82–2496.

U.S. Court of Military Appeals.

Aug. 29, 1983.

For Appellant: *Commander Matthew J. Wheeler,* JAGC, USNR, *Lieutenant Jerome A. Busch,* JAGC, USNR (on brief); *Lieutenant Colonel H.S. Atkins,* USMC.

. For Appellee: *Commander W.J. Hughes,* JAGC, USN, *Major E.D. Clark,* USMC (on brief).

*Opinion of the Court*

COOK, Judge:

Pursuant to his pleas, the accused was convicted by special court-martial, military judge alone, of absence without leave for over three years, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The military judge sentenced him to a bad-conduct discharge, confinement at hard labor for 3 months, and reduction to E–3 with the recommendation that the bad-conduct discharge be suspended and the accused returned to duty. In accordance with a pretrial agreement the convening authority approved the bad-conduct discharge but suspended confinement at hard labor in excess of 60 days. He declined to suspend the discharge because "further clemency is not considered warranted in light of the benefits to the accused of the pretrial agreement." The supervisory authority approved the sentence as approved and suspended. Both officers indicated that they had considered a petition for clemency submitted by the accused and the convening authority also indicated that he had considered the recommendation of the military judge.

At trial the accused presented an impressive array of evidence in mitigation and extenuation, including prior enlisted evaluations, a citation for peacetime heroism signed by the Secretary of the Navy, and the testimony of one of his superiors. Thereafter, he made an unsworn statement in which he detailed the familial obligations and pressures which initially led him to absent himself, and which progressively increased, causing him to prolong his absence well beyond the time period he had original-

ly anticipated. He admitted that his unauthorized absence was not the right way to handle his problem and vowed that if returned to duty he would not repeat his misconduct for any reason. He accepted the fact that he could be returned to duty in the grade of E–1 (he had been an E–5 at the time of trial), but he emphasized that he was willing to return in that grade and to serve in any capacity in which the Navy needed him. He concluded:

> I understand the maximum sentence I can receive from you, sir; and I want to finish my time that I have left in the Navy to try to get an honorable discharge, so that I would be able to better my civilian life and also finish my obligation to the Navy and the contract I signed to serve my time; and, to know that I, myself, came back and tried to do my best to stay in and finish my obligation to the United States Navy. And, I will accept anything, any punishment that I deserve.

Before the Court of Military Review, the accused renewed his pleas for retention. His counsel argued:

> A bad-conduct discharge is inappropriate considering the appellant's prior evaluations (D.E. C, D, E), his citation for heroism while serving on the USS BELKNAP (D.E. F), Chief Long's testimony that the appellant would be an asset to the Navy if retained (R. 18–19), the appellant's express desire to remain on active duty (R. 21–22), and the military judge's strong recommendation that the appellant be returned to duty and his bad-conduct discharge be suspended. (R. 24–25).

Two members of the Court of Military Review rejected his appeals and concluded that "[u]nder the facts and circumstances of this case, we consider an unsuspended bad-conduct discharge to be appropriate." *United States v. Clark*, unpublished opinion at 1 (NMCM 82 2496, August 27, 1982). However, in a concurring/dissenting opinion Senior Judge Gladis wrote:

> I join the majority in affirming the findings, but dissent from its affirmance of the sentence. Although the accused has been convicted of a serious offense, in view of his record of heroism, desire to return to duty, and the recommendation of the military judge, an unsuspended bad-conduct discharge is inappropriate. Since this Court cannot suspend the discharge, I would disapprove it.
>
> I recognize that, if an accused is convicted of a serious offense, a court may be reluctant to adjudge a sentence which does not include a punitive discharge, even though suspension of the discharge is appropriate because of either the accused's potential for rehabilitation, his past record, or other matters in extenuation and mitigation. In order to avoid the injustice which may result from execution of a punitive discharge in such a case, I urge the Court of Military Appeals to reconsider its decisions in *United States v. Occhi*, 2 MJ 60 (CMA 1976) and *United States v. Darville*, 5 MJ 1 (CMA 1978). *See United States v. Silvernail*, 1 MJ 945 (NCMR 1976).

Unpublished opinion at 2.

In respect for the dilemma posed by Senior Judge Gladis, we specified the following issue:

> IF THE COURT OF MILITARY REVIEW CONSIDERS AN UNSUSPENDED BAD CONDUCT DISCHARGE AN INAPPROPRIATE PUNISHMENT, MAY IT TAKE ACTION OTHER THAN DISAPPROVAL OF THE DISCHARGE?

The limitations on the power to suspend sentences has troubled us since the beginnings of our Court. In *United States v. Simmons*, 2 U.S.C.M.A. 105, 6 C.M.R. 105 (1952), we were asked by certification from the Judge Advocate General of the Navy whether the Board of Review had the power to suspend a bad-conduct discharge. Because

> [a] board of review ... [was] expressly given powers of remission and mitigation and ... [was] directed to affirm "such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved,"

Article 66(c), UCMJ, 10 U.S.C. § 866(c), we were

> impressed by the defense argument of the desirability of having this power vested in the boards of review, and recognize[d] merit in the contention that boards of review cannot adequately fulfill the mandate either to impose appropriate sentence or insure uniform sentence practices throughout the services unless they have the power to suspend disciplinary discharges.

*Id.* at 106, 6 C.M.R. at 106. However, concluding that,

> [t]hese boards are purely creatures of statute and their power and authority—like that of the court-martial itself—must be found within the confines of the creating legislation,

*id.* at 107, 6 C.M.R. at 107, we could find no statutory authority for the boards to order sentences to be suspended. *Id.* at 107–08, 6 C.M.R. at 107–08. We noted then that the power to suspend had always "been ... vested solely in those reviewing authorities which had the power to order execution of a sentence." *Id.* at 107, 6 C.M.R. at 107.

Shortly thereafter, in *United States v. Marshall,* 2 U.S.C.M.A. 342, 8 C.M.R. 142 (1953), we held that the court-martial lacked the power to suspend the sentence it adjudged. This decision was grounded on the same premise that the court-martial lacked the power to order a sentence executed.

After passage of the Military Justice Act of 1968, Pub.L.No. 90–632, 82 Stat. 1335, we were confronted with the assertion that Congress intended that the military judge should have "functions and powers more closely allied to those of Federal district judges," *see* S.Rep. No. 1601, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 4503–04, and, hence, the provisions of the Probation Act, 43 Stat. 1259, as amended, 18 U.S.C. § 3651, would grant the power to suspend sentences to the military judge. *United States v. Occhi,* 2 M.J. 60 (C.M.A.1976). However, our examination of Articles 71 and 74, UCMJ, 10 U.S.C. §§ 871 and 874, respectively, indicated that Congress intended to grant the power to suspend sentences only to certain named officials. Since we found that Congress considered "the area of sentencing powers, but took no action inconsistent with the opinions of this Court denying the trial court the power to suspend a sentence, its action imports acceptance of the prior judicial construction of existing statutes." *Id.* at 62, citing *United States v. Washington,* 1 M.J. 473 (C.M.A.1976). Being "unwilling to apply a statute outside the statutory scheme of the Code in a manner inconsistent therewith," *id.* at 62, I concluded that "the military judge ha[d] no power to suspend a sentence." *Id.* at 63. One of my Brothers agreed with this portion of the opinion.

Finally, in *United States v. Darville,* 5 M.J. 1 (C.M.A.1978), we faced the certified question whether the "Court of Military Review exceed[ed] its authority when it acted to suspend the execution of ... [a] bad-conduct discharge." We examined the enabling language of the Military Justice Act of 1968 and the codification of Title 10, U.S.C., and found that no change to existing law had been made. Consequently, we adhered to the rationale of *Occhi* and held that the Court of Military Review had no independent power to suspend a sentence.

Although there have been amendments to the Uniform Code of Military Justice since 1978,[1] Congress has not chosen to change the statutory provisions pertinent here. In light of the long and consistent judicial interpretation by this Court of the sentencing powers granted to the trial and intermediate sentencing authorities, Congress' failure to change the statutory scheme must be viewed as acceptance of that interpretation. *United States v. Washington, supra,* and cases cited therein.

---

1. Act of November 9, 1979, Pub.L. No. 96–107, § 801, 93 Stat. 810; Act of December 12, 1980, Pub.L. No. 96–513, Title V, §§ 511 (24) and (25), 94 Stat. 2922; Act of December 23, 1980, Pub.L. No. 96–579, § 12, 94 Stat. 3369; Military Justice Amendments of 1981, Pub.L. No. 97–81, 95 Stat. 1085.

■ While we may acknowledge that there is a latent ambiguity between the statutory mandate to the Courts of Military Review to approve "only such findings of guilty, and the sentence" as they find "correct in law and fact and" determine, "on the basis of the entire record, should be approved," Article 66(c), *supra,* and their power to disapprove or set aside all or parts of the sentence, and the failure to grant the power to suspend all or parts of the sentence to that court pursuant to that mandate, we still can find no statutory authority which would justify recognition of the latter. We must take the law as we find it and interpret it according to our best judicial judgment; we are not free to create new law in the guise of judicial interpretation. There is no doubt that there are cases where the power of suspension would be beneficial to the Court of Military Review,[2] and this may be one of them. However, the authority to bestow such power lies in the Congress, not in this Court.

We are aware that the Senate has recently passed a bill which directs that a commission be appointed to study, among other things, whether military judges and Courts of Military Review should be authorized to suspend sentences.[3] This Commission may well recommend enactment of such legislation, and Congress may well agree.[4] Pending such positive action by Congress, we must adhere to our consistent line of precedents.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge FLETCHER concurs.

EVERETT, Chief Judge (concurring):

In his dissent below, Senior Judge Gladis called attention to a dilemma faced by Courts of Military Review—as well as by military judges in the field—because of their lack of authority to suspend any portion of a sentence. Perhaps Congress ultimately will decide to grant suspension power to military judges at the trial level, appellate level, or both. Until Congress acts, I reluctantly must agree with the majority opinion that such a power cannot be inferred by us.

At the same time, however, it deserves emphasis that each Court of Military Review is under a statutory obligation to approve "only such findings of guilty, and the sentence . . . as it finds correct in law and fact and *determines, on the basis of the entire record, should be approved.*" Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c) (emphasis added). Suspension affects the severity of a sentence; and

2. We are informed that one service Court of Military Review has, on one occasion at least, returned a case to the convening/supervisory authority with a mandate to approve not more than a suspended discharge. Additionally, in *United States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972), we upheld the action of the Court of Military Review in enforcing that part of a pretrial agreement which bound the convening authority to suspend portions of the sentence. *See also United States v. Scott,* 4 M.J. 205 (C.M.A.1978), where we upheld the authority of the Court of Military Review to correct an ambiguity in the action of the convening authority by suspending the punitive discharge.

3. S. 974, § 9(b)(1)(B), 98th Cong., 1st Sess. (1983).

4. The powers of suspension and probation are entrusted to the Legislative and Executive Branches of the Government under the Constitution. *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955); *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *United States v. Darville,* 5 M.J. 1 (C.M.A.1978). This philosophy is evident in Articles 71 and 74, Uniform Code of Military Justice, 10 U.S.C. §§ 871 and 874, respectively. If the power of suspension were granted to military judges (and presumably courts-martial members when they sit as the sentencing authority) and to Courts of Military Review, there is always the possibility of conflict with the convening authority, who *should* normally be in a better position to evaluate the accused's potential for rehabilitation and further productive service. *See United States v. Simmons,* 2 U.S.C.M.A. 105, 106–07, 6 C.M.R. 105, 106–07 (1952). Of course, the repeated failures of convening authorities to exercise their power might well justify legislation granting such power to the Courts of Military Review.

so, as has been pointed out by the Navy Court of Military Review,[1]

logic impels the conclusion that a suspended sentence/punishment lies somewhere on the linear spectrum between an approved and executed sentence as awarded, and a sentence which is set aside and not executed. It is a part or amount of a sentence. Suspended punishment predicated on good behavior is a form of punishment. It is restrictive in nature, rehabilitative in effect, and deters future misconduct. It is not as severe in the first instance—a lesser punishment; and more onerous in the second—a greater punishment.

Therefore, if a Court of Military Review concludes that an unsuspended sentence would be too harsh, it cannot affirm that sentence—even though the court considers that if some portion of the sentence were suspended, it then would be appropriate as measured "on the linear spectrum" of severity. Since under *United States v. Darville,* 5 M.J. 1 (C.M.A.1978), a Court of Military Review has no power to suspend the sentence, what alternatives are available to it?

Of course, reduction of the sentence is one choice but such action may place the resulting sentence at too low a point "on the linear spectrum." Another alternative—fully consistent with the majority opinion here and with our precedents—is to remand the case to the convening authority or, in the case of a special court-martial, to the supervisory authority with instructions that he review the case further and not affirm any sentence more severe than one in which certain parts have been suspended. Under such a scenario, the Court of Military Review does not make the final determination whether a sentence should be suspended or on what terms. Instead, that choice is left to the convening authority. The Court of Military Review only informs him that, in the performance of its own duties under Article 66, it has determined that the unsuspended sentence he has approved is inappropriate. The convening authority then has an opportunity to review the sentence further with full knowledge as to the upper limit on appropriateness, as measured "on the linear spectrum."

For example, if in the case at bar, the Court of Military Review had determined that an unsuspended discharge was an inappropriate sentence, it could have remanded to the supervisory authority with instructions that he reconsider the case and approve no sentence more severe than one which included a suspended bad-conduct discharge. The final decision would have remained with the supervisory authority whether to suspend the discharge and, if so, on what terms. However, if he decided not to do so, he would have been advised that upon further review the Court of Military Review would be required under Article 66 to disapprove the discharge entirely, since it had concluded that an unsuspended discharge was inappropriate and it lacked authority to suspend the discharge.

Since the majority in the court below "consider[ed] an unsuspended bad-conduct discharge to be appropriate," unpublished opinion at 1, there was no occasion for them to consider how to deal with the dilemma posed by Judge Gladis' dissent. Hopefully, in situations where an unsuspended discharge does not seem appropriate but a suspended discharge would be, the remedy which I have outlined will provide Courts of Military Review with a means for achieving a fair result within the allocation of sentencing responsibilities which the Code presently mandates.

---

1. *United States v. Silvernail,* 1 M.J. 945, 949 (1976), *certificate dismissed as moot,* 5 M.J. 1128 (C.M.A.1976).