### UNITED STATES

v.

### Airman First Class Michael A. MERRITT, FR 554–17–2450, United States Air Force.

### ACM 24287.

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 Dec. 1983.

Decided 15 June 1984.

---

Approved sentence: Bad conduct discharge, confinement.at hard labor for three (3) months and reduction to airman basic.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Richard A. Morgan. Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Colonel Andrew J. Adams, Jr.

Before KASTL, CANELLOS and RAICHLE, Appellate Military Judges.

## DECISION

### PER CURIAM:

The accused contends that the prosecution substantially amended an absence specification to reflect a new and more serious offense, requiring such specification to be resworn.

The original specification reflected a six-month absence without leave from June to December 1980. When the accused failed to return to military control by December 1980 the charge was preferred and sworn to in that month. The accused did not in fact return until August 1983; the charge sheet was then amended by a pen-and-ink change to reflect the three year absence. Testimony at trial revealed that it was an administrative error to place the December 1980 date on the charge sheet as the closing date of the absence. See MCM, 1969 (Rev.) paras. 33*b*, 68*c*, and 215*d*; however, the military judge denied the defense motion to dismiss.

We find that the military judge was correct in his ruling: the modification made to the charge sheet neither aggravated the seriousness of the offense nor subjected the accused to greater punishment. *United States v. Dyer*, 5 M.J. 643 (A.F.C.M.R. 1978); *see also United States v. Arbic*, 16 U.S.C.M.A. 292, 36 C.M.R. 448 (1966); *United States v. Krutsinger*, 15 U.S.C. M.A. 235, 35 C.M.R. 207 (1965). It cannot be disputed that increasing the duration to show a six month absence without leave vice a three-year absence facially made the offense appear more serious, even though the maximum imposable punishment was not thereby increased. Nevertheless, our earlier opinion in *Dyer* makes it clear that there is no prejudice to the substantial rights of the accused in such a situation. *United States v. Dyer, supra*, at 645. *See also United States v. Arbic, supra*, at 450.

The findings of guilty and sentence are AFFIRMED.

KASTL, Senior Judge, concurring:

I concur in the result reached by my colleagues. One other matter concerns me, however. Despite the length of the absence, I believe this accused presents impressive credentials for sentence amelioration of some type. He voluntarily returned to the Air Force, having claimed a dramatic change in his life following a religious conversion. His earlier record reveals neither prior convictions nor Article 15 punishments. His earlier overall ratings are a 7 and an 8. He completed junior college and married during his absence.

He was tried some four months after his return. Among those presenting state-

ments on his behalf advocating clemency are: the Deputy Base Commander (eager and sincere ... first rate results ... valuable augmentee ...); the Executive Officer to the Base Commander (almost daily contact, extremely cooperative and personable, first class job and actively sought more responsibility; very deserving of rehabilitation); the First Sergeant (outstanding; accused deeply regrets the absence; mature with very good potential for further service); noncommissioned officer in charge (excellent work and outstanding attitude; potential for further military service); and immediate commander (potential to become a valuable asset; worked many long and hard hours in achieving an "outstanding" rating for the squadron).

In this case, the confinement time has expired and it follows that confinement at the 3320th Correction and Rehabilitation Squadron for which the accused volunteered is not feasible. Under the facts and circumstances of this case, I would find an unsuspended discharge inappropriate as part of the sentence.* I would return the case to the convening authority, requesting that he reconsider the sentence with a view to suspension or disapproval of the discharge. *See United States v. Clark*, 16 M.J. 239 (C.M.A.1983); *United States v. Millsap*, 17 M.J. 980 (A.C.M.R.1984).

---

* The Air Force Correction Program is established under Air Force Regulation 125–18, Operation of Air Force Correction and Detention Facilities (1 February 1980). Since little emphasis has been placed on this program in the last several years, I quote pertinent portions for thoughtful consideration in appropriate cases.

> 1–1. The Air Force Correction Program. The Air Force correction program is based on the philosophy that a prisoner is sentenced to confinement as punishment, and not for punishment. The program provides an atmosphere of mutual understanding in which the basic individual dignity of the prisoner is preserved and strengthened. All facets of the program include positive measures designed to improve the attitude and behavior of the prisoner, with a view toward restoration to military duty or separation as a better citizen. Most prisoners sentenced to a punitive discharge have the opportunity for a second chance to remain as a member of the Air Force.
>
> \*     \*     \*     \*     \*     \*
>
> 7–2. Policy on Restoration. Air Force policy is to restore to duty prisoners who are thought physically, mentally, and morally qualified to become useful members of the Air Force.
>
> a. This chapter applies only to airmen or former airmen confined under Air Force authority as a result of a sentence by court-martial.
>
> b. A prisoner's suitability for restoration will be determined after a careful review of the member's potential for future honorable and useful service in the Air Force.
>
> (1) Conviction of serious crimes against persons or property, such as murder, rape,

arson, armed robbery or burglary; conviction of desertion or absence without leave from a unit engaged in combat; or other matters, such as a record of homosexual acts or tendencies; habitual use or peddling of narcotics; and chronic alcoholism or psychoneurotic disorders, ordinarily preclude restoration to duty.

> (2) However, suitability for restoration is not determined solely upon the basis of the offense committed. Each case will be considered under the basis of individual merit, including such circumstances as youth, combat exhaustion, exceptionally good combat service, absence of a criminal record, absence of a juvenile delinquency pattern, prior satisfactory military service, and demonstrated ability to perform military duties.
>
> \*     \*     \*     \*     \*     \*
>
> 8–2. Measuring Success. The success of the squadron is measured in terms of its total mission functions. The number of restorations, alone, is not the measure of success. Neither is the number of airmen who are returned to civilian life a measure of failure. There is no required or expected ratio for these dispositions.
>
> a. In fact, the success of the squadron is measured by the total number of proper dispositions, including both the restorations to duty and the returns to civilian life, and the quality of supplemental research services that measure progress and give the program meaning.
>
> b. However, the use of intensive rehabilitative efforts, coupled with research feedback, must be directed toward increasing the success rates to provide the best return from this program.