**UNITED STATES, Appellee,**

v.

**Brian R. HEALY, Staff Sergeant, U.S. Air Force, Appellant.**

**No. 52,347.
ACM 24507.**

U.S. Court of Military Appeals.

Sept. 19, 1988.

For appellant: *Lieutenant Colonel Patrick C. Sweeney* (argued), *Colonel Leo L. Sergi* (on brief).

For appellee: *Captain Jeffrey H. Curtis* (argued), *Colonel Kenneth R. Rengert, Colonel Andrew J. Adams, Jr., Major Joseph S. Kistler* (on brief), *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni.*

## Opinion of the Court

EVERETT, Chief Judge:

In accordance with his negotiated pleas, appellant was convicted by a general court-martial of various drug offenses [1] and sentenced to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the grade of E-1. The convening authority reduced the period of confinement to 5 years but otherwise approved these results. The Court of Military Review affirmed modified findings [2] and the approved sentence.

Before the Court of Military Review, appellate defense counsel moved to file 25 documents for consideration by the court on the issue of sentence appropriateness. The documents consisted of letters recommending reduction of the period of confinement. All but two [3] were written by prison officials. Noting that the documents were in the nature of clemency materials, the Court of Military Review denied the motion to file, citing *United States v. Castleman*, 10 M.J. 750 (A.F.C.M.R.), *pet. denied*, 12 M.J. 14 (1981), as authority for its action. This Court specified the issue of whether the Air Force decision in *Castleman* had been subsequently overruled by *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

### I

In *United States v. Castleman, supra*, the Court of Military Review held that, in considering an issue of sentence appropri-

ateness, the Court was restricted to matters contained in the "entire record"—which "encompasse[d] the transcript, the documentary exhibits, and the allied papers," as well as any appellate briefs, including those submitted by trial defense counsel pursuant to Article 38(c), Uniform Code of Military Justice, 10 USC § 838(c). The rule announced in *Castleman* was based on a long line of earlier cases decided by this Court. *See, e.g., United States v. Fagnan*, 12 U.S.C.M.A. 192, 30 C.M.R. 192 (1961); *United States v. Lanford*, 6 U.S.C. M.A. 371, 20 C.M.R. 87 (1955); *United States v. Simmons*, 2 U.S.C.M.A. 105, 6 C.M.R. 105 (1952). Indeed, in *Fagnan* one of the documents which we held that the then-Board of Review had properly declined to consider was a report on the accused's conduct while in post-trial confinement.

*Castleman* and its predecessors relied on a distinction between review of sentence appropriateness and consideration of clemency. Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. Clemency involves bestowing mercy—treating an accused with less rigor than he deserves. Shakespeare made this distinction when, in the "Merchant of Venice," he wrote, "And earthly power doth then show likest God's, When mercy seasons justice." Act IV, Scene 1, line 184. *See United States v. Lanford, supra* at 378, 20 C.M.R. at 94. Both the Old and the New Testaments contain exhortations to be just and merciful; but, apparently there, too, these qualities are viewed as distinct. *See, e.g.,* Micah 6:8; Matthew 23:23.

▉ As interpreted by this Court, Article 66, UCMJ, 10 USC § 866, assigns to the Courts of Military Review only the task of determining sentence appropriateness: do-

---

1. The convictions were for conspiracy to distribute cocaine, in violation of Article 81 of the Uniform Code of Military Justice, 10 USC § 881; and two specifications each of possession, use, and distribution of cocaine and one specification each of possession, use, and distribution of marijuana—all in violation of Article 134, UCMJ, 10 USC § 934.

2. The Court of Military Review dismissed all three possession offenses.

3. These two letters were signed by the Senior Protestant Chaplain and the Chief, Chapel Support Activities. Both letters, recommending early release from confinement, were dated before the convening authority took action on the case.

ing justice. Of course, a judicial body is especially suited to perform this task. The responsibility for clemency, however, was placed by Congress in other hands. Thus, the convening authority may grant mercy by not referring charges to trial or, after trial, by reducing the accused's sentence pursuant to "command prerogative." *See* Art. 60(c)(1), UCMJ, 10 USC § 860(c)(1). After the convening authority has acted, other officials are empowered by the Code to "commute, remit, or suspend" all or part of the sentence or to change the character of a punitive discharge.[4] Article 71 of the Uniform Code, 10 USC § 871, deals with commutation, remission, and suspension of any portion of a sentence; Article 74, UCMJ, 10 USC § 874, deals with remission or suspension of the unexecuted parts of a sentence; and Article 74(b) empowers the Secretary of a military department or a designee to "substitute an administrative form of discharge for a [punitive] discharge or dismissal executed" pursuant to "the sentence of a court-martial." Various service regulations implement these statutory provisions.

Undoubtedly, Congress intended to entrust clemency to the persons who it believed would be best qualified and in the best position to obtain and evaluate information relevant to clemency—such as the accused's conduct while in confinement, personal financial burdens confronting the accused or his family, and his present mental and physical condition. We also presume that Congress did not want to duplicate responsibility for the same activity.

■ In some respects, though, the distinction between judicial review of sentence appropriateness and consideration of clemency is not complete. For example, neither a court-martial nor a Court of Military Review may suspend a sentence. *See United States v. Clark*, 16 M.J. 239 (C.M.A.1983);

*United States v. Darville*, 5 M.J. 1 (C.M.A. 1978). On the other hand, in the civilian community suspension of a sentence usually is done by the trial judge when the sentence is imposed and generally is considered to relate to the appropriateness of the sentence.[5]

■ Furthermore, the record of trial—which the Court of Military Review may consider in determining the appropriateness of the sentence adjudged by the court-martial and approved by the convening authority—will include any post-trial brief submitted by the accused under Article 38(c) of the Uniform Code or any objection by defense counsel to the recommendation of the staff judge advocate. *See United States v. Goode*, 1 M.J. 3 (C.M.A.1975); Art. 60. The Article 38(c) brief, the *Goode* objection, or the attachments may contain information which has been submitted to the convening authority in order to induce a favorable exercise of his discretion. Some of this information usually will bear on the accused's potential for rehabilitation, which is relevant both to clemency and to sentence appropriateness. Thus, information submitted to the convening authority for clemency purposes will in some instances be part of the "record" which is considered by the Court of Military Review in determining sentence appropriateness.

■ Although the Code provides a means after trial for an accused to get clemency-oriented information into the "record" prior to action by the convening authority and thereby can bring this information to the attention of the Court of Military Review, the Code does not provide an opportunity for the accused and his counsel to supplement the "record" after the convening authority has acted. We infer from this omission that Congress never intended that a Court of Military Review would be under any duty to receive addi-

---

4. Consistent with our interpretation of the allocation of responsibilities intended by Congress, we have held that a Court of Military Review may not itself suspend a sentence to a punitive discharge, even if it determines that an unsuspended discharge is inappropriate. *United States v. Clark*, 16 M.J. 239 (C.M.A.1983). However, under such circumstances it may remand to the convening authority to consider whether

he wishes to suspend the discharge. *Id.* at 243 (Everett, C.J., concurring).

5. The Court of Military Review is free to determine, however, that a sentence which contains an unsuspended punitive discharge is not appropriate and so should not be affirmed. *United States v. Clark, supra.*

tional information on sentencing after the convening authority had acted.

 We need not decide whether, after action by the convening authority, an appellant may move that the Court of Military Review in its discretion remand the case for further consideration by the convening authority and then, upon remand, submit additional information to the convening authority in connection with the exercise of his "command prerogative." In that event, the clemency information ultimately would reach the attention of the Court of Military Review. Likewise, we need not decide whether the Court of Military Review, if it chooses, may grant a motion to supplement the "record" by the filing of additional documents allegedly relevant to sentence appropriateness. The point is that the Court of Military Review has no duty to receive information or data that purports to be relevant only to clemency and that, after the convening authority has acted, the Code provides no way for bringing to the attention of the Court of Military Review information that purportedly bears even on sentence appropriateness.[6]

## II

Contrary to appellant's contention, neither Grostefon nor any of the decisions that followed it requires a Court of Military Review to receive evidence or information concerning the appropriateness of appellant's sentence, if that evidence or information could not otherwise be received. Moreover, Grostefon did not expand the scope of review under Article 66 or require that all the personal desires of the accused be accommodated. *Cf. United States v. Mitchell,* 20 M.J. 350 (C.M.A.1985); *United States v. Arroyo,* 17 M.J. 224 (C.M.A.1984); *United States v. Knight,* 15 M.J. 202 (C.M.A.1983).

Instead, the purpose of our holding in Grostefon was to assure that an accused had the opportunity to bring to the attention of the appellate court any issue he wished to have considered with respect to the findings and sentence, as finally approved by the convening authority. Thus, we require appellate defense counsel to invite the attention of the Court of Military Review or of this Court to issues specified by an accused. Thereby, we have sought to guarantee that no accused would be left with the belief that his lawyer had not raised an issue which he wished to have considered. Imposition of this requirement was viewed as especially important in military justice, because the defense counsel at both the trial and appellate levels usually are military officers, and an accused whose issues have not been raised on appeal might conclude that the omission was the result of command influence.

In applying Grostefon, we have allowed appellate defense counsel simply to identify issues which the accused wished to have raised, rather than requiring counsel to brief those issues fully. In turn, if the issue has been identified as possibly meritorious, the Court may require briefs thereon. *United States v. Knight, supra.* However, Grostefon did not signal abolition of basic rules of appellate practice and procedure. Thus, in *United States v. Sumpter,* 22 M.J. 33 (C.M.A.1986); and *United States v. Mitchell, supra* at 351, we noted that Grostefon did not excuse the filing of untimely motions in the Court of Military Review or late petitions for grant of review in this Court. By the same token, Grostefon did not render admissible the clemency materials which Healy's defense counsel wished to have received by the Court of Military Review.

## III

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

6. If there is evidence of insanity after the trial has been completed and the convening authority has acted, the Court of Military Review can receive psychiatric information relevant to mental competence to stand trial, to cooperate with the appeal, or mental responsibility for the crime itself. *See United States v. Lilly,* 25 M.J. 403 (C.M.A.1988). Once admitted for this purpose, the information would be in the "record" and presumably could be used by the Court of Military Review in performing its task of determining what sentence is appropriate.