### UNITED STATES

v.

**Lori L. CASTILLO, Lance Corporal (E-3), U.S. Marine Corps.**

**NMCCA 200101326.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 27 Feb. 2001.

Decided 30 Sept. 2003.

Maj Charles C. Hale, USMC, Appellate Defense Counsel.

Maj Anthony C. Williams, USMC, Appellate Defense Counsel.

LT C.B. Julka, JAGC, USNR, Appellate Government Counsel.

LtCol John F. Kennedy, USMCR, Appellate Government Counsel.

Before DORMAN, Chief Judge, VILLEMEZ and PRICE, Appellate Military Judges.

DORMAN, Chief Judge:

In accordance with her pleas, the appellant was convicted at a special court-martial before military judge alone of an unauthorized absence terminated by apprehension, in violation of Article 86, Uniform Code of Military

Justice, 10 U.S.C. § 886. She was awarded a bad-conduct discharge, confinement for 51 days, and reduction to pay grade E–1. The convening authority (CA) approved the sentence as adjudged.

We have examined the record of trial and conclude that the findings and the sentence, as modified herein, are correct in law and fact. Following our corrective action, no errors remain that are materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

This case is now before us for a second time. On 31 July 2001, we granted relief to the appellant's assignment of error alleging that her sentence was inappropriately severe. In the decretal paragraph of that decision we stated:

> The [CA's] action of 3 July 2001 is hereby set aside. The record will be returned to the Judge Advocate General for remand to the [CA], who may upon further consideration approve an adjudged sentence no greater than one including a discharge *suspended* under proper conditions.

*United States v. Castillo,* NMCM No. 200101326, 2002 WL 1791911 (31 Jul 2001)(slip op. at 10). In our earlier decision, both the lead opinion and the concurring opinion relied upon the concurring opinion of former Chief Judge Everett, of the then Court of Military Appeals. In fact, we cited to that opinion in the decretal paragraph. For clarity, we set forth that language once again, primarily for the CA and the staff judge advocate (SJA):

> Therefore, if a Court of Military Review [—now Court of Criminal Appeals—] concludes that an unsuspended sentence would be too harsh, it cannot affirm that sentence—even though the court considers that if some portion of the sentence were suspended, it then would be appropriate.... Since ... a Court of Military Review has no power to suspend the sentence, what alternatives are available to it? Of course, reduction of the sentence is one choice but such action may place the resulting sentence at too low a point "on the linear spectrum." Another alternative—fully consistent with the majority opinion

here and our precedents—is to remand the case to the convening authority ... with instructions that he review the case further and not affirm any sentence more severe than one in which certain parts have been suspended. Under such a scenario, the Court of Military Review does not make the final determination whether a sentence should be suspended or on what terms. Instead, that choice is left to the convening authority. The Court of Military Review only informs him that, in the performance of its duties under Article 66, it has determined that the unsuspended sentence he has approved is inappropriate. The convening authority then has an opportunity to review the sentence further with full knowledge as to the upper limit on appropriateness....

*United States v. Clark,* 16 M.J. 239, 242–43 (C.M.A.1983) (Everett, C.J., concurring). We also clearly stated that we were remanding the record of trial "to the [CA] for a new action **consistent with our *decision*.**" *Castillo,* slip op. at 10 (emphasis added).

### Facts on Remand

Following our decision of 31 July 2002, the Judge Advocate General forwarded the record of the appellant's court-martial to the CA, the Commanding Officer, Headquarters and Headquarters Squadron, Marine Corps Air Station Miramar. The record was "forwarded for compliance with the 31 July 2002 decision of the U.S. Navy–Marine Corps Court of Criminal Appeals." Letter of the Judge Advocate General of 17 Sep 2002. It was requested that the CA complete his action by 26 Oct 2002.

On 18 October 2002, LtCol Bartel, the SJA for Marine Corps Air Station Miramar, prepared a new Staff Judge Advocate's Recommendation (SJAR) in this case. In paragraph 2g(2) of the SJAR, LtCol Bartel advised the CA that:

> In accordance with Navy–Marine Corps Court of Criminal Appeals (NMCCA) letter (sic) 200101326 of 31 July 02, NMCCA recommends you set aside the bad conduct discharge and upon further consideration approve an adjudged sentence no greater

than one including a discharge suspended under proper conditions.

SJAR dated 18 Oct 2002 at 2. The SJA then recommended to the CA that the adjudged sentence was legal and appropriate and that it should be approved. The SJA did not recommend to the CA that he should suspend the bad-conduct discharge. On 13 November 2002, the SJAR was served upon the trial defense counsel, Capt K.A. Parrella, USMC.

On 3 January 2003 Capt Parrella submitted a clemency request to the CA in response to the SJAR. In the clemency request, Capt Parrella disagreed with the content of the SJAR. Capt Parrella wrote:

> The defense respectfully disagrees with the [SJAR]. The action of the NMCCA ... is more than a mere suggestion, but rather instructs the [CA] to "approve an adjudged sentence no greater than one including a discharge *suspended* under proper conditions." The [SJAR] ... is nothing more than a reiteration of the original SJAR, and treats the action of the NMCCA as a mere "suggestion." The amount of consideration afforded to this matter by the NMCCA (contained within its lengthy written opinion), clearly indicate (sic) that it intended its action as more than a mere request for reconsideration. In fact, NMCCA makes it quite clear that given the circumstances of this case, suspension or disapproval of the punitive discharge is the *appropriate* action and serves the best interests of justice. As such, the defense respectfully requests that you act accordingly.

Detailed Defense Counsel letter of 3 Jan 2003. On 13 January 2003, the SJA prepared an addendum to his SJAR in which he advised the CA that he had reviewed the matters submitted by the defense on 3 January 2003, and that "nothing presented by the defense justifies clemency in this case, therefore, my original recommendations remain unchanged." Addendum to the Recommendation of the Staff Judge Advocate of 13 Jan 2003.

On 21 January 2003 LtCol D.T. Siniff, USMC, the CA, took his action in this case.

The pertinent portion of the action reads as follows:

> In the Special Court–Martial U.S. v. Lance Corporal Lori L. Castillo ..., the sentence is approved and except for that part of the sentence extending to a bad conduct (sic) discharge, will be executed. In accordance with Navy–Marine Corps Court of Appeals (sic) letter (sic) 200101326 of 31 July 2002, I have considered the Instruction for Compliance with the Decision of the United States Navy–Marine Corps Court of Criminal Appeals to set aside the bad conduct (sic) discharge, however, I do not intend to suspend the bad conduct (sic) discharge.

Station Special Court–Martial Order Number 19–01 of 21 Jan 2003.

### Discussion

■ The appellant has now raised a new assignment of error before this court. In that new assignment the appellant asserts error in that:

THE CONVENING AUTHORITY ERRED WHEN HE APPROVED THE SENTENCE AS ADJUDGED, IN DIRECT CONTRADICTION TO THIS COURT'S PREVIOUS DECISION.

Appellant's Motion for leave to File Supplemental Assignment of Error, of 17 Apr 2003. As relief, the appellant asks us to set aside the sentence and approve a sentence of no punishment. While we concur that the CA erred as asserted by the appellant, approving a sentence of "no punishment" would afford the appellant a windfall to which she is not entitled.

In response to the appellant's supplemental assignment of error, the Government argues that the CA did not err in taking the action he took on 21 Jan 2003. The premise of the Government's argument seems to be its belief this court sought to "circumvent its inability to suspend a sentence" by our earlier decision in this case. Answer on Behalf of the Government of 15 May 2002 at 2 and 3. In its brief, the Government suggests that it was this court, and not the CA, that erred. The Government also argues that the CA was aware of our decision in this case and considered it in taking his action. *Id.* at 3.

Succinctly, the Government's argument on this issue is only slightly less misguided than was the advice of the SJA in his SJAR of 18 October 2002. First, our earlier decision was not an attempt to circumvent anything; rather, our action was consistent with *Clark, supra.* Second, nothing in the SJAR or in the CA's action leads us to the conclusion that the CA considered our actual opinion. Rather, concerning our direction to the CA, it appears to us that what he considered was the erroneous advice by his SJA as to what was contained in our opinion. Of note, the SJA advised the CA that we had recommended that the CA set aside the bad-conduct discharge, language the CA repeats in his action. In our earlier decision, we did not make any recommendations to the CA, nor did we direct that he set aside the appellant's punitive discharge. Furthermore, in our earlier decision we did not tell the CA what sentence he was required to approve. Upon remand the CA had total discretion in what sentence to approve, except that he could not approve a sentence that included an unsuspended bad-conduct discharge. Our decision afforded the CA the "opportunity to review the sentence further with full knowledge as to the upper limit on appropriateness...." *Clark,* 16 M.J. at 243. Our **decision** was not a recommendation. *See United States v. Tualla,* 52 M.J. 228, 230 (C.A.A.F. 2000) (commenting that its holding in an earlier case was "not an idle remark made in passing." Rather it was a binding decision on the lower court or the military judge involved in the case.)

Parties practicing before trial and appellate courts have only three options when faced with rulings by trial or appellate courts. They can request reconsideration of the ruling. Failing to do that they are to comply with the decision of the court or appeal the decision. If the Government considered our earlier decision to remand this case to the convening authority for action consistent with our opinion to have been in error, the Government could have easily certified that issue to the Court of Appeals for the Armed Forces (C.A.A.F.). In electing not to certify what clearly would have been a legal issue to the C.A.A.F., the Government was required to comply with the decision of this court. Just as this court is bound to follow the decisions of superior courts, *United States v. Kelly,* 45 M.J. 259, 262–63 (C.A.A.F.1996), so too are those subordinate to this court in the military justice chain. The failure of a military judge, convening authority, or staff judge advocate to follow the decision of this court undermines the military justice system and its statutory basis. See *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982)(noting that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.") *See also United States v. Cox,* 22 C.M.A. 69, 72, 46 C.M.R. 69, 1972 WL 14393 (1972) (noting that a convening authority is "bound by the mandate of the appellate court.")

Without question, the CA's failure to take an action consistent with our earlier decision is a clear and obvious error. It is also a troubling departure from the fairness our military justice system seeks to ensure. Particularly so, when the action was based on the clearly erroneous advice of the SJA. We will correct the error in our decretal paragraph.

**Sentence Appropriateness**

█ Our earlier decision addressed and resolved two assignments of error dealing with the earlier CA's action and the earlier SJAR. In fact, the earlier action was taken without allowing the trial defense counsel the opportunity to comment on the SJAR. By remanding the case, those two assignments of error are now moot. The original third assignment of error is still pending before us. That assignment of error asserted that the approved sentence was inappropriately severe and asked that the approved bad-conduct discharge be set aside.

The issue of sentence appropriateness is one this court regularly addresses, and we are readily familiar with the standards of review on this issue. A sentence appropriateness determination is decidedly different from that of clemency, which is beyond our power to grant. *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988). Our superior

Court explains the distinction between these two concepts in this way: "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. Clemency involves bestowing mercy—treating an accused with less rigor than he deserves." *Id.* Thus, our task under Article 66, UCMJ, on the issue of sentence appropriateness is simply to ensure that justice is done. *Id.* at 395–96. We accomplish this task by " 'individualized consideration of' the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.' " *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982)(*quoting United States v. Mamaluy,* 10 C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81, 1959 WL 3587 (1959)).

The appellant stands convicted of an unauthorized absence that lasted for 366 days, an absence cut short only by the appellant's apprehension. Such an offense standing alone is a very serious breach of military discipline, and in most instances would warrant a bad-conduct discharge. *United States v. Fitzgerald,* 13 M.J. 643, 646 (N.M.C.M.R. 1982), *rev. denied,* 14 M.J. 205 (C.M.A.1982). The offense, however, is but one half of the equation.

The appellant enlisted in September 1997 and had not engaged in any documented misconduct prior to the commencement of her unauthorized absence in January 2001. As we noted in significant detail in our earlier opinion, the appellant's absence was mitigated by the fact that prior to her unauthorized absence she had reported intermittent incidents of sexual harassment over a period of two years. These incidents were investigated by several different investigating officers, one of who a Marine Major concluded that the appellant's allegation of an indecent assault should have been reported by the command, but was not, to the Provost Marshal's office. Additionally, the command Equal Opportunity Advisor documented the appellant's complaints detailing specific instances of sexual harassment at various times by six different senior enlisted Marines during a 23–month period. This advisor concluded that the appellant was "the victim of some very offensive behaviors." That behavior ranged from verbal harassment to sexual assault. Defense Exhibit A at 43.

As we said in our earlier opinion, "the record shows a young Marine who appeared to be performing well and who most likely would not have committed this offense, but for the depression and helplessness she felt in being periodically victimized by Marine NCOs senior to her." Slip opinion at 10. Upon reconsideration of the third assignment of error, and considering the entire record, we find that this assignment of error also has merit.

### Conclusion

The findings are affirmed. With respect to the sentence, only that portion of the approved sentence as extends to confinement for 51 days and a reduction to pay grade E–1 is affirmed.

Senior Judge PRICE and Judge VILLEMEZ concur.