*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, PENNIX, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Brandon R. KERR**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202200140**

_____

Decided: 17 October 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
John L. Ferriter

Sentence adjudged 7 April 2022 by a special court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for eight months and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Commander Leah M. Fontenot, JAGC, USN*

For Appellee:
*Lieutenant Commander Paul S. LaPlante, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USN*

_____

[1] Appellant was credited with having served 140 days of pretrial confinement.

Judge PENNIX delivered the opinion of the Court, in which Senior Judge KISOR and Judge DALY joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

PENNIX, Judge:

A military judge sitting as a special court-martial convicted Appellant, consistent with his pleas, of two specifications of larceny in violation of Article 121, UCMJ. The military judge sentenced Appellant to confinement for eight months and a bad-conduct discharge consistent with Appellant's plea agreement. The military judge recommended to the convening authority that the bad-conduct discharge be suspended for six months. Appellant submitted matters in clemency, requesting that the bad-conduct discharge be suspended for a minimum of six months. The convening authority considered the military judge's recommendation and Appellant's request, denied the request, and approved the sentence as adjudged.

Appellant asserts one assignment of error: that the bad-conduct discharge portion of the sentence is inappropriately severe based on the nature of the offense, Appellant's prior service, his service-connected trauma, and his sincere remorse. We agree that the bad-conduct discharge is inappropriately severe and take action in our decretal paragraph.

## I. BACKGROUND

Appellant pleaded guilty to stealing an explosive flashbang and two gas canisters (military property), and a fellow Marine's car. Appellant's command had issued Appellant explosive flashbangs and gas canisters to use while deployed.[2] Once the deployment was complete, Appellant was ordered to return all remaining gear and munitions issued during the deployment.[3] Appellant withheld one explosive flashbang and two gas canisters, which he intentionally

---

[2] R. at 37.

[3] *Id.*

concealed until he could store them in his desk in his barracks room, to keep as "a souvenir, a keepsake."[4] Sometime later, Appellant found a key fob in the parking lot near his barracks building on board Camp Pendleton.[5] The next day he located the car to which the key fob belonged, a grey Lexus sedan, and stole it.[6] The car belonged to a fellow Marine who had also returned from a deployment and was in the process of preparing to separate from the Marine Corps. Appellant caused substantial property damage to the car and loss of the other Marine's government-issued gear that the Marine was required to return as part of his separation out-processing. As a result, the other Marine was required to repay the Government for the lost property and to pay for alternate means of transportation to get to his medical appointments, classes, and other errands.[7]

At trial, the military judge discussed the plea agreement with Appellant to ensure that he understood all the terms and that he had signed the plea agreement voluntarily.[8] The military judge then found Appellant guilty of the Charge and Specifications to which he pleaded guilty, finding that Appellant pleaded guilty to these larceny offenses knowingly, intelligently, consciously, and voluntarily, and that the pleas were supported by a factual basis.[9]

## II. DISCUSSION

### A. Standards of Review

We review sentence appropriateness de novo.[10] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[11] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[12] The review requires

---

[4] R. at 42.

[5] R. at 50.

[6] R. at 50-54.

[7] R. at 87-89.

[8] R. at 58-76.

[9] R. at 77.

[10] *United States v. Lane,* 64 M.J. 1, 2 (C.A.A.F. 2006).

[11] Article 66(d)(1), UCMJ.

[12] *United States v. Healy,* 26 M.J. 394, 395 (C.M.A. 1988).

an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[13] In making this assessment, we analyze the record as a whole.[14]

**B. Appellant's character of service prior to the crimes.**

Appellant entered the Marine Corps in August 2017. He excelled in recruit training and was immediately identified to serve in highly competitive Marine Corps billets, the first of which was service at the Marine Barracks, Washington, D.C., where he participated in training for the Presidential Support Program. Appellant was then competitively selected to serve in support of the White House Communications Agency [WHCA].

In 2021, Appellant was deployed to Kabul, Afghanistan, as a member of the Fleet Marine Forces, 2nd Battalion, 1st Marine Regiment (2/1), assigned as security forces working on behalf of the U.S. Department of State to provide security and crowd control at the Hamid Karzai International Airport as part of the U.S. withdrawal from Afghanistan and the associated civilian humanitarian evacuation. Appellant was specifically assigned to provide security at the airport's Abbey Gate Tower [Abbey Gate] checkpoint located along the perimeter fence where crowds of Afghans waited to be screened and let into the airport for departure from Afghanistan.

The record reveals that Appellant performed with exceptional valor and calmness throughout the difficult day of the infamous Abbey Gate bombing. On 26 August 2021, at the Abbey Gate checkpoint, Appellant survived the improvised explosive device [IED] suicide bombing that detonated approximately 25 meters away from where he was standing. This IED blast took the lives of 13 U.S. servicemembers, wounded many more, and killed dozens of Afghans. When the blast went off, Appellant observed, "there's smoke and there's blood, and all of the thousands of people that had been standing there are all gone, whether they're dead or laying down or retreating. Everything that was, was now gone."[15] Appellant responded immediately. He and another Marine carried a third Marine who died before they could get him to safety. Appellant assisted a wounded U.S. Army Soldier to reach safety and also helped save the life of another wounded Marine.[16]

---

[13] *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[14] *Healy,* 26 M.J. at 395-97.

[15] R. at 228.

[16] R. at 227-29.

## C. Appellant's return to Camp Pendleton.

Appellant and his fellow Marines left Afghanistan just five days later, on 31 August 2021, travelling to Kuwait, then to Saudi Arabia, and back to Camp Pendleton, California. When he returned to Camp Pendleton, Appellant began having nightmares and experiencing vivid flashbacks of the concussive blast from the IED. He unsuccessfully attempted to cope with his symptoms but did not seek professional medical treatment for his symptoms.

## D. The crimes and the sentence in this case.

Shortly after his return from Afghanistan, on 17 November 2021, Appellant was arrested for stealing another Marine's car. A subsequent investigation revealed his theft of the explosive flashbang and two gas canisters.

This Court has significant discretion in determining sentence appropriateness but may not engage in acts of clemency.[17] This Court must ensure that justice and the law are upheld, and that this court-martial results in punishment that is sufficient, but not greater than necessary, to promote and maintain good order and discipline.[18]

In giving individualized consideration to the nature and seriousness of these crimes of larceny and the character of Appellant, we note the many facts and circumstances that have been established in the record to support Appellant's claim that the bad-conduct discharge portion of his sentence is inappropriately severe. They include: Appellant's exceptional performance in training and high-visibility assignment to the WHCA; Appellant's specific acts of heroism in Afghanistan and his life-saving actions taken for his fellow Marines, an Army Soldier, and an Afghan woman and her children; the mental stress and traumas that Appellant incurred in the Marine Corps;[19] Appellant's otherwise stellar record of service; the numerous and highly laudatory character statements from command members and colleagues who served with him; and evidence of Appellant's then-untreated symptoms that were noted as consistent

---

[17] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[18] Rule for Courts-Martial [R.C.M.] 1002(f).

[19] R. at 177; Appellant was witness to and tried to prevent suicide attempts of two fellow Marines and witnessed a negligent homicide of a third Marine—while stationed at a Marine Corps barracks, prior to his deployment to Afghanistan.

with a clinical psychiatric diagnosis of post-traumatic stress disorder [PTSD].[20] In addition, Appellant presented testimony from a 28-year licensed professional counselor who testified that Appellant scored "very high" on the evaluation tests that were conducted prior to his court-martial and after his return from Afghanistan—for both traumatic brain injury [TBI] and PTSD.[21]

A sentence limited only to the eight months of confinement awarded adequately reflects the seriousness of the offenses committed, promotes respect for the law, provides just punishment for the offenses, promotes adequate deterrence of misconduct, protects others from further crimes by Appellant, and serves to rehabilitate Appellant.[22]

In conducting a de novo review, we find the sentence to be inappropriately severe insofar as it includes a bad-conduct discharge. We agree with the military judge that it is not appropriate because of the matters presented in extenuation and mitigation.[23] The military judge could have, and should have, simply rejected the plea agreement in its entirety.[24] Given the current plea agreement process, where minimum and maximum punishments are often the

---

[20] Defense Ex. F, 706 Board Report by CDR John M. Woo, MC, USN, Lead Forensic Psychiatrist, Naval Hospital Camp Pendleton, stating "At the time of the alleged criminal conduct, the accused did report symptoms consistent with clinical psychiatric diagnosis of Post-Traumatic Stress Disorder (PTSD)." Appellant's experience in Kabul was not the only tragedy he experienced while serving in the Marine Corps. *See* R. at 177.

[21] R. at 198-200 (citing testimony of licensed professional counselor, Reverend John Kerr).

[22] R.C.M. 1002(f)(3)(A)-(F).

[23] R. at 281-92. *See also* Military Judge's Addendum to Statement of Trial Results. We recognize that Appellant's plea agreement required the military judge to adjudge a bad-conduct discharge. But we agree with the military judge that a bad-conduct discharge was inappropriate in this case.

[24] *See United States v. Alkazahg*, 81 M.J. 764, 797 n.129 (N-M. Ct. Crim. App. 2021); *see also United States v. Raines*, 82 M.J. 608 (N-M. Ct. Crim. App. 2022.)

same, the role of trial judges (and appellate judges) as ultimate assessors of sentence appropriateness has become all the more important.

## III. CONCLUSION

We **AFFIRM** the findings of guilty for the crimes of larceny to which Appellant pleaded guilty.

The portion of the sentence that provides for eight months of confinement is **AFFIRMED**. The bad-conduct discharge portion of the sentence is **SET ASIDE** as being inappropriately severe. All rights, privileges, and property, of which Appellant has been deprived by virtue of the portion of the sentence set aside by this decision, are ordered restored.[25]

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[25] *See* Articles 58a(b), 58b(c), 75(a), UCMJ.