*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, GASTON, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Chase T. MILLER**
Interior Communications Electrician Seaman Apprentice (E-2)
U.S. Navy
Appellant

**No. 201900234 (f rev)**

Decided: 20 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary
*upon further review following remand from*
*the United States Court of Appeals for the Armed Forces*

Military Judge:
Roger E. Mattioli

Sentence adjudged 8 May 2019 by a special court-martial convened at Naval Station Great Lakes, Illinois, composed of a military judge alone. Sentence approved by the convening authority: reduction to E-1, confinement for 12 months, and a bad-conduct discharge.

For Appellant:
*Commander Eric C. Roper, JAGC, USN*

For Appellee:
*Lieutenant Kevin G. Edwards II, JAGC, USN*
*Lieutenant Kimberly Rios, JAGC, USN*
*Lieutenant Catherine M. Crochetiere, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge HOUTZ delivered the opinion of the Court, in which Chief Judge
MONAHAN and Senior Judge GASTON joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

HOUTZ, Judge:

This case is before us a second time. In 2019, Appellant was convicted, in
accordance with his pleas, of violating a lawful general order, making false
official statements, and wrongfully using a controlled substance, in violation of
Articles 92, 107, and 112a, Uniform Code of Military Justice [UCMJ].[1] In 2021,
we set aside the Convening Authority's Action and Entry of Judgment due to
what we considered to be premature post-trial action.[2] The Judge Advocate
General of the Navy certified that issue to the Court of Appeals for the Armed
Forces, which determined the convening authority's action was not premature
and remanded the case for completion of appellate review under Article 66,
UCMJ.[3]

Appellant raises two assignments of error: (1) the military judge abused his
discretion when he permitted, over Defense objection, the mother of a deceased
Sailor to make a victim impact statement when Appellant was not found guilty
of an offense relating to the deceased Sailor; and (2) Appellant's sentence is
inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's convictions arise out of an incident occurring aboard Naval Sta-
tion Great Lakes in which a fellow Sailor, Fire Controlman Seaman Recruit
[FCSR] Echo,[4] died in his barracks room of a drug overdose. An investigation
revealed that the day prior to FCSR Echo's death, he and Appellant traveled
to Chicago where they obtained heroin and drug paraphernalia. They used the

---

[1] 10 U.S.C. §§ 892, 907, 912a (2012).

[2] *United States v. Miller*, No. 201900234, 2021 CCA LEXIS 59 (N-M. Ct. Crim. App.
Feb. 10, 2021) (unpublished).

[3] *United States v. Miller*, 82 M.J. 204 (C.A.A.F. 2022).

[4] All names in this opinion, other than those of Appellant, the judges, and counsel,
are pseudonyms.

heroin in Chicago and then returned to the installation where they continued to use the drug. FCSR Echo was found dead by his roommate the following morning. During the investigation, Appellant was interviewed by the Naval Criminal Investigative Service [NCIS] and made false statements regarding the circumstances surrounding FCSR Echo's death.

Appellant was charged with involuntary manslaughter, reckless endangerment, obstructing justice, wrongful interference with an administrative proceeding, wrongful introduction of a controlled substance, violation of a lawful general order, willful disobedience of a superior officer, wrongful drug use, and making false official statements. Before trial, he entered into a pretrial agreement wherein he agreed to plead guilty to wrongful drug use, violating a lawful general order by possessing drug paraphernalia, and making false official statements, in exchange for the convening authority referring his case to a special court-martial.

During the pre-sentencing hearing, over Defense objection, the military judge allowed FCSR Echo's mother to provide an unsworn victim impact statement pursuant to Rule for Courts-Martial [R.C.M.] 1001A. The military judge found that FCSR Echo's mother was a "crime victim" within the meaning of R.C.M. 1001A(b)(1) and allowed her to provide a statement describing the emotional impact her son's death had on her and her family.

## II. DISCUSSION

### A. The Meaning of "Crime Victim"

Article 6b, UCMJ, delineates the rights of crime victims and mirrors those afforded under the Crime Victims' Rights Act.[5] R.C.M 1001A, now codified at R.C.M. 1001(c), is the President's implementation of and guidance for the application of Article 6b. It defines "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty or the individual's lawful representative or designee appointed by the military judge under these rules."[6] Any individual who meets these criteria has rights as a victim under R.C.M. 1001(c); the person need not be a named victim on the charge sheet, or

---

[5] 18 U.S.C. § 3771.

[6] R.C,M. 1001(c)(2)(A).

a named victim's designee under Article 6b.[7] As our superior court found in *United States v. Hamilton*, the mother of a child pornography victim was a crime victim for purposes of R.C.M. 1001A in light of the crimes committed against her daughter and "the resulting financial and psychological hardships suffered by the family."[8]

In non-capital cases, such victims have the right to make a sworn or unsworn statement, the contents of which "may only include victim impact or matters in mitigation."[9] "Victim impact" includes "any financial, social, psychological, or medical impact on the victim *directly relating to or arising from* the offense of which the accused has been found guilty."[10] The court in *Hamilton* "cautioned military judges, particularly where victim impact statements are offered to a panel of members, to be mindful of information that is not attributable to the offenses for which the accused is being sentenced."[11] To that end, as we have previously stated, it is incumbent on the military judge to "ascertain whether the impact *as described by the victim* was related to or arose from the offense of which the accused was found guilty."[12]

Here, Appellant's trial defense counsel objected to FCSR Echo's mother providing a victim impact statement, arguing that she was not a victim because none of the offenses Appellant was found guilty of—violating a lawful general order by possessing drug paraphernalia, wrongful use of a controlled substance, and making a false official statement—related to her son. The military judge overruled the objection, finding the psychological harm caused to FCSR Echo's mother was attributable to all three offenses, and permitted her to provide an unsworn statement in which she described the "void" she felt after her son's death and the effect his death had on her mental health and her family.

Appellant asserts the military judge erred in this ruling. We review a military judge's decision to allow a victim to present an unsworn victim impact

---

[7] To the extent this court's unpublished opinion in *U.S. v. Felix*, No. 201800071, 2019 CCA LEXIS 258, *33-39 (N-M. Ct. Crim. App. June 19, 2019), suggests otherwise, we abrogate that language.

[8] *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019).

[9] R.C.M. 1001(c)(3).

[10] R.C.M. 1001A(b)(2) (emphasis added). This language is broader and more encompassing than government aggravation evidence, defined as evidence "*directly related to or resulting from*" such an offense. R.C.M. 1001(b)(4) (emphasis added).

[11] *Hamilton*, 78 M.J. at 340 n.6.

[12] *In re A.J.W.*, 80 M.J. 737, 746 (N-M. Ct. Crim. App. 2021).

statement for abuse of discretion.[13] The military judge's findings of fact will only be overturned if they are clearly erroneous; we review conclusions of law de novo.[14]

We agree with the military judge's conclusion that FCSR Echo's mother was a crime victim under the rule, since she suffered direct emotional harm as a result of the commission of an offense of which Appellant was found guilty. We conclude that her victim impact statement could properly discuss the psychological harm arising from two of the three offenses for which Appellant was found guilty: wrongful use of heroin and possession of drug paraphernalia. The circumstances of those offenses involved a joint enterprise between Appellant and FCSR Echo to obtain, purchase, and use heroin together. Appellant bought the drug paraphernalia and provided the needle FCSR Echo used to inject the heroin that ultimately caused his death. As such, we determine that the psychological harm FCSR Echo's death caused to FCSR Echo's mother directly arose from the offenses of wrongful drug use and possession of drug paraphernalia of which Appellant was found guilty.

While we disagree with the military judge's conclusion that the harm caused to FCSR Echo's mother was attributable to Appellant's false statements, we conclude she had the statutory and regulatory right to submit an unsworn victim impact statement describing the emotional harm brought about by Appellant's commission of the other two offenses. She was not designated by the military judge as FCSR Echo's designee under Article 6b, UCMJ; however, had she been so designated she would have been permitted to offer a statement describing the impact of Appellant's crimes on FCSR Echo himself. Here, the military judge simply recognized FCSR Echo's mother as an individual who suffered the requisite harm that allowed her to offer testimony about the crimes' impact on herself. It is important to note that the same individuals could conceivably wear both hats—that is, offer victim impact statements on behalf of a named victim in a charge as that victim's designee and also offer statements about the impact of the offense on themselves. In this case, the statement FCSR Echo's mother was permitted to offer was focused solely on the impact that her son's death had on her and her family; it did not attribute that harm to Appellant's false statements. Therefore, to the extent the military

---

[13] *Hamilton,* 78 M.J. at 340 (recognizing that victim impact statements are not evidence but applying the same standard of review to their admission).

[14] *United States v. Owens,* 51 M.J. 204, 209 (C.A.A.F. 1999) (citing *United States v. Reister,* 44 M.J. 409, 413 (C.A.A.F. 1996)).

judge erred in attributing any of the victim's emotional harm to the false statement offenses, we find no prejudice.

## B. Appellant's Sentence is Appropriate

Appellant asserts that his sentence of reduction to E-1, 12 months confinement, and a bad-conduct discharge is inappropriately severe. We review sentence appropriateness de novo.[15] "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[16] This requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[17] In making this assessment, we analyze the record as a whole.[18] Despite our significant discretion in determining sentence appropriateness, we may not engage in acts of clemency.[19]

The record indicates that prior to the offenses of which he was convicted, the Navy had taken all appropriate action to both help Appellant and hold him accountable for his prior drug use. He had attended a drug rehabilitation program and was in the process of being administratively separated for drug use when he and FCSR Echo went to Chicago, purchased and used needles and heroin, and then brought the remaining drugs back onto a military installation where they continued to abuse drugs, resulting in the death of FCSR Echo. When Appellant was interviewed by authorities, he made multiple false statements in an attempt to cover up his own misconduct.

At trial, the Government submitted 16 exhibits and the testimony of an NCIS agent, who testified that Appellant's false official statements impeded his ability to properly investigate FCSR Echo's death. Appellant's trial defense counsel requested 11 months confinement during sentencing argument. The military judge awarded 12. The pretrial agreement Appellant voluntarily signed contemplated only the protections of the jurisdictional maximum sentence at special court-martial. As we have previously stated, "we generally refrain from second guessing or comparing a sentence that flows from a lawful

---

[15] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[16] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[17] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[18] *Healy*, 26 M.J. at 395-97.

[19] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

pretrial agreement. . . ."[20] After reviewing the record as a whole, we find that the approved sentence of a bad-conduct discharge, 12 months confinement, and reduction to E-1 was an appropriate punishment for Appellant's serious criminal misconduct, and that Appellant received the punishment he deserves.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights. Arts. 59, 66, UCMJ. Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED.**

Chief Judge MONAHAN and Senior Judge GASTON concur.

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court

---

[20] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished); *see also United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328, *8 (N-M. Ct. Crim. App. June 30, 2021) (unpublished) (questioning an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty").