*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Beto L. VALDEZ Jr.**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202300141**

_____

Decided: 26 September 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Andrea C. Goode

Sentence adjudged 14 February 2023 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 36 months, and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Commander Benjamin E. Doskocil, JAGC, USN*

---

[1] Appellant was credited with 137 days of pretrial confinement.

For Appellee:
*Lieutenant Michael A. Tuosto, JAGC, USN*
*Lieutenant Lan T. Nguyen, JAGC, USN*

―――――――――――――――

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

―――――――――――――――

PER CURIAM:

A general court-martial convicted Appellant, pursuant to his pleas, of three specifications of domestic violence, in violation of Article 128b, Uniform Code of Military Justice (UCMJ).[2]

Appellant asserts two assignments of error (AOEs), which we summarize as follows: (1) the military judge abused her discretion when she considered the entirety of the victim's impact statement during sentencing; and (2) Appellant's adjudged sentence of three years' confinement for Charge I, Specification 4, was inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant met the victim, Sergeant (Sgt) Juliet,[3] while the two were stationed together at Camp Lejeune in 2017. Over the next five years and several changes of duty stations, Appellant and Sgt Juliet maintained an intimate relationship. In late March 2022, while in Appellant's barracks room, Appellant slapped Sgt Juliet on her leg after a disagreement. The slap left a "handprint mark and some bruises."[4]

On 15 April 2022, Sgt Juliet received a Snapchat video from another Marine. It depicted the Marine and Sgt Juliet engaged in sexual intercourse. After seeing the video, Appellant decided to leave the bar they were in and began

―――――――――――――――

[2] 10 U.S.C. § 928b.

[3] All names in this opinion, other than Appellant, counsel, and the military judge, are pseudonyms.

[4] Pros. Ex. 1 at 4.

"pushing [Sgt Juliet] to go because she wasn't moving fast enough."[5] Appellant pushed Sgt Juliet so hard she fell to her knees, scraping and bruising her legs.

Once seated in Appellant's car, the two were discussing the video when Appellant became angry and punched Sgt Juliet in the left eye. Over the next few days, Sgt Juliet "developed a severe black eye."[6] Roughly a week later, after experiencing headaches, Sgt Juliet went to medical and was diagnosed with a concussion.[7]

Between 15 April 2022 and 19 June 2022, Appellant and Sgt Juliet were arguing at Appellant's on-base residence. As the argument escalated, Appellant went to the garage, retrieved a pistol, "racked [the pistol's slide] back to make sure it was clear," and told Sgt Juliet to open her mouth.[8] He then placed the pistol in her mouth. When the military judge asked Appellant why he did this, he replied, "To strike fear[.]"[9]

For these incidents, the Government charged Appellant with three specifications of violating Article 128b, UCMJ. The Government additionally charged Appellant with a fourth specification of domestic violence and a single specification of sexual assault under Article 120, UCMJ. At trial, if convicted of all charges, Appellant faced forty-six years and six months of confinement.[10]

Appellant ultimately agreed to plead guilty to the three incidents of domestic violence described above. Although Appellant faced a maximum of thirteen years' confinement for pleading guilty to the three specifications, under the terms of a plea agreement he faced only a period of confinement ranging from twenty-four to thirty-six months.[11] The convening authority also agreed to withdraw and conditionally dismiss the remaining domestic assault and sexual assault specifications. Also in the plea agreement was Appellant's acknowledgment that Sgt Juliet could provide a victim impact statement pursuant to *United States v. Terlep*.[12]

---

[5] R. at 32.

[6] Pros. Ex. 1 at 7.

[7] Pros. Ex. 1 at 7.

[8] R. at 42-43.

[9] R. at 43.

[10] Appellate Ex. I at 2-4.

[11] R. at 46.

[12] 57 M.J. 344 (C.A.A.F. 2002).

During the Government's presentencing case, the military judge sustained trial defense counsel's objection to several items of evidence offered in aggravation. First, she excluded documentation regarding the domestic violence and sexual assault specifications to which Appellant pleaded not guilty.[13] Second, the military judge excluded a portion of a recorded telephonic conversation between Appellant and Sgt Juliet, in which the latter brought up allegations of sexual assault and Appellant responded, "I raped you, I raped you plenty[.]"[14] Third, the military judge ruled irrelevant an image of a steak knife allegedly held by Appellant while sexually assaulting Sgt Juliet.[15] Finally, the military judge excluded in its entirety a video purported to depict Appellant sexually assaulting Sgt Juliet while holding the steak knife.[16]

After the military judge excluded this evidence, but before Sgt Juliet began reading her statement, trial defense counsel objected to portions of the expected statement.[17] In response, the military judge distinguished between a victim impact statement and evidence in aggravation, stating that, "[a statement offered under] R.C.M. 1001c is not evidence, it is a matter as to be considered. Which is significantly different."[18] When asked what the specific objection was, trial defense counsel responded, "So the objection would be that some of the continuing course of conduct that she's going to [. . .] talk about, related to charges that were not before the court, were not charged, he's not pled guilty. Totally separate and apart from the court-martial, Your Honor."[19] In overruling the objection, the military judge stated, "I'm going to allow her to read her unsworn and then I'm going to allow you to rebut it."[20]

Sergeant Juliet proceeded to read her victim impact statement to the military judge, providing a detailed description of various incidents of domestic violence and sexual assault to which Appellant had not pleaded guilty. Specifically, she described being sexually assaulted by Appellant after returning to

---

[13] R. at 69-72, 75-76, 79, and 166.

[14] R. at 69-72.

[15] R. at 75-76.

[16] R. at 79.

[17] R. at 82.

[18] R. at 82.

[19] R. at 82.

[20] R. at 82.

his home following the 15 April 2022 pushing/punching incident. She also described additional acts of domestic violence during the same encounter.

Sergeant Juliet next described how, at some point after the initial alleged—but uncharged—sexual assault, she took a knife from the kitchen and hid it in a couch cushion. According to Sgt Juliet's victim impact statement, Appellant saw the knife in the cushion, told Sgt Juliet to remove her pants, and "dragged the sharp tip of the knife on the outside of [her] genitals."[21] She also described how "[Appellant] turned the knife around and put the handle inside [her]."[22] Sergeant Juliet's statement described Appellant filming the incident and, while holding the knife, forcing Sgt Juliet to put Appellant's penis in her mouth. Next, Sgt Juliet stated that, after Appellant "realized [she] wasn't going to do [fellatio] the way he wanted, [Appellant] started to rape [Sgt Juliet] again."[23] She described the incident as a "day's long rampage of terror[.]"[24]

Later in the five-page victim impact statement, Sgt Juliet described being strangled by Appellant. She concluded her statement by mentioning the recorded phone call describing how Appellant stated, "I raped you. I raped you in the morning, I raped you plenty."[25]

When Sgt Juliet finished her statement, the military judge said, "I really appreciate that. Defense, you said you had some objections. I don't see anything objectionable about that."[26]

In response, trial defense counsel offered in rebuttal text messages from 15 and 18 April 2022 evidencing that Appellant and Sgt Juliet engaged in "rape-fantasy play[.]"[27] These texts were admitted into evidence. Additionally, trial defense counsel offered a command investigation, dated 28 November 2022, in which an investigating officer opined that Sgt Juliet violated the Navy's fraternization policy, issued unlawful orders, provided false official statements,

---

[21] R. at 90.

[22] R. at 90.

[23] R. at 90.

[24] R. at 90.

[25] R. at 93.

[26] R. at 95.

[27] R. at 96.

engaged in extramarital conduct, and violated the Marine Corp's sexual harassment policy, among other alleged instances of misconduct. This, too, was admitted into evidence.

Trial counsel argued for a total of 36 months' confinement, while trial defense counsel requested the military judge award a "dishonorable discharge, reduction [to] E-1, and 24 months of confinement."[28] Ultimately, the military judge sentenced Appellant to 24 months' confinement each for Specifications 1 and 2 of Charge I, and 36 months' confinement for Specification 4 (the assault with the pistol) of Charge I, to run concurrently, reduction to E-1, and a dishonorable discharge.

Additional facts necessary to resolve Appellant's AOEs are discussed below.

## II. DISCUSSION

### A. The military judge did not abuse her discretion by considering the entirety of Ms. Juliet's victim impact statement.

Appellant argues the military judge abused her discretion by considering Sgt Juliet's unsworn description of incidents of sexual assault and domestic violence of which Appellant was not convicted. Appellant asserts that certain portions of the statement exceeded the scope of what is permissible under R.C.M. 1001(c).

#### 1. Standard of Review and Law

"We review a military judge's decision to allow a victim to present an unsworn victim impact statement for abuse of discretion."[29] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[30]

---

[28] R. at 123. Trial defense counsel specifically requested Appellant receive 24 months of confinement, to run concurrently, for each of the three specifications.

[29] *United States v. Miller*, 82 M.J. 788, 791 (N-M. Ct. Crim. App. 2022) (citing *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019) (recognizing that victim impact statements are not evidence but applying the same standard of review to their admission)).

[30] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

A victim impact statement is not evidence.[31] Nor does it constitute witness testimony.[32] It is not offered into evidence by the Government, but "introduced by the victim[.]"[33] Accordingly, "the question is not whether the information contained in the victim impact statement is 'relevant,' or even whether a Mil. R. Evid. 403 balancing test is required[.]"[34] Instead, the concern is "whether the statement is within the proper 'scope' of R.C.M. 1001A, or its successor, R.C.M. 1001(c)."[35]

Pursuant to R.C.M. 1001(c)(3), the contents of victim impact statements may only include matters in mitigation and "victim impact," with the latter defined to include "any financial, social, psychological, or medical impact on the crime victim *directly relating to or arising from* the offense of which the accused has been found guilty."[36] "A victim's statement should not exceed what is permitted under R.C.M. 1001(c)(3)," and "[u]pon objection by either party or *sua sponte*, a military judge may stop or interrupt a victim's statement that includes matters outside the scope of R.C.M. 1001(c)(3)."[37] "While the military judge is the gatekeeper for unsworn victim statements, an accused nonetheless has a duty to state the specific ground for objection in order to preserve a claim of error on appeal."[38]Although "directly relating to or arising from the same offense" is not defined in R.C.M. 1001(c), we have previously looked to how the President defines admissible "evidence in aggravation" in R.C.M. 1001(b).[39] Within this context, uncharged misconduct may be offered in aggravation if it "is directly related to or resulting from the offenses of which the accused has

---

[31] *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021).

[32] *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018).

[33] *In re A.J.W.,* 80 M.J. 737, 744 (N-M. Ct. Crim. App. 2021) (citing *Hamilton*, 78 M.J. 335).

[34] *In re A.J.W.*, 80 M.J. at 744.

[35] *Id.*

[36] R.C.M. 1001(c)(2)(B) (emphasis added). Pursuant to R.C.M. 925, the accused was sentenced under "the Rules for Court Martial in effect prior to December 28, 2023." It is, however, worth noting for practitioners that the 2024 edition of the Rules for Court Martial has eliminated the word "directly" for purposes of R.C.M. 1001(c).

[37] R.C.M. 1001(c)(5)(B), Discussion.

[38] *Tyler*, 81 M.J. at 113.

[39] *United States v. Campos*, No. 202200246, 2024 CCA LEXIS 87, *26 (N-M Ct. Crim. App. Feb. 29, 2024), *rev. granted*, No. 24-0138/MC, 2024 CAAF LEXIS 469 (C.A.A.F., Aug.15, 2024 (mem.)).

been found guilty."[40] This type of evidence is admissible when it demonstrates "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community, [e.g.], the service-member's home."[41] Such evidence demonstrates "the true impact of the charged offenses on the [victims]."[42]

Logic supports applying this definition to an unsworn victim impact statement. Rule for Courts-Martial 1001(c) provides that the victim of a crime "has the right to be reasonably heard" concerning "any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." As we recently stated in *United States v. Campos*, "[t]his right would prove illusory if it did not include the ability to describe circumstances necessary for the sentencing authority to understand the true impact of the crime on the victim."[43]

Furthermore, judges are "presumed to know the law and apply it correctly."[44] Absent clear evidence to the contrary, we will assume the military judge did not sentence Appellant on any improper basis.[45]

### 2. Analysis

Appellant directs our attention to *United States v. Hamilton*, in which the Court of Appeals for the Armed Forces determined the military judge abused his discretion by not adequately distinguishing between evidence admitted in aggravation and an unsworn victim impact statement.[46] But the circumstances in the present case are substantially different. In *Hamilton*, the victims did not

---

[40] R.C.M. 1001(b)(4).

[41] *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990); *see also United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001) ("when uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims, it is encompassed within the language 'directly relating to or resulting from the offenses of which the accused has been found guilty' under RCM 1001(b)(4).").

[42] *Nourse*, 55 M.J. at 231.

[43] 2024 CCA LEXIS 87 at *25-26.

[44] *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citation omitted).

[45] *Id.*

[46] 78 M.J. 335, 338-340 (C.A.A.F. 2019).

present their statements in-person, and the statements were offered and admitted as prosecution exhibits.[47]

Here, Sgt Juliet made her statement in-person and at the proper time—after the Government's case in aggravation but before the Defense had the opportunity to present its case in extenuation and mitigation. Moreover, the statement was correctly marked as an appellate exhibit, rather than a prosecution exhibit.[48] Most importantly, the military judge clearly stated that "R.C.M. 1001c is not evidence," but rather "a matter as to be considered."[49]

And it was proper to consider the statement. We find the matters contained in Sgt Juliet's unsworn statement describe a continuing course of conduct.[50] The sexual assaults she described were a continuation of the physical assaults Appellant committed upon her. They immediately followed upon their return to Appellant's barracks room after he punched her. While domestic assault and sexual assault fall under different articles of the UCMJ and involve different elements, we will consider them "similar crimes" under the circumstances presented. Both acts involved the violent physical abuse of an intimate partner. Taken together, they convey the true impact of the acts of domestic violence to which Appellant pleaded guilty.

But even were we to determine otherwise by finding that parts of the victim impact statement were outside the scope of R.C.M. 1001(c) and that those matters were improperly referenced by trial counsel in the sentencing argument, we are confident this did not impact the military judge's sentencing decision. The military judge properly identified that Sgt Juliet's victim impact statement was not evidence and allowed Appellant to rebut the statement. And the military judge specifically did not consider evidence of the uncharged incidents of domestic violence and sexual assault, including Appellant's statement that he raped Ms. Juliet, when the Government attempted to introduce the evidence

---

[47] *Id.* at 338-39.

[48] Appellate Ex. IV.

[49] R. at 82. *See Tyler*, 81 M.J. at 112.

[50] *See generally Nourse*, 55 M.J. at 229. If *evidence* of uncharged misconduct is admissible when part of a continuing course of conduct, it follows that similar *non-evidence* in victim impact statements may be considered in assessing the full impact of Appellant's crimes.

in aggravation.[51]  Therefore, we are confident the military judge did not consider Ms. Juliet's statement *as evidence*.

What evidence the military judge did consider more than explains the sentence she imposed. The Government presented a strong case in aggravation: the detailed stipulation of fact describing, *inter alia*, how Sgt Juliet had no reason to know the pistol he placed in her mouth was not loaded; photographs of Sgt Juliet's many bruises and "severe black eye;"[52] the medical diagnosis of her concussion; and Appellant's own callous statements from the recorded conversation between him and Sgt Juliet. In contrast, Appellant's case was relatively weak, involving mostly service records and a few character letters. We are therefore convinced that, even if the military judge did improperly consider parts of Sgt Juliet's statement, it did not result in prejudice to Appellant.

## B. Appellant's sentence was not inappropriately severe.

Appellant argues his sentence was inappropriately severe. Specifically, Appellant asserts that three years' confinement is inappropriately severe punishment for Charge I, Specification 4. Again, we disagree.

### 1. Standard of Review and Law

We review sentence appropriateness de novo.[53] This Court may only affirm "the sentence or such part or amount of the sentence as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[54] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[55] Our review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[56] In making this assessment, we analyze the record as a whole.[57]

---

[51] R. at 69-72, 75-76, 79, and 166.

[52] Pros. Ex. 1 at 7.

[53] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[54] Article 66(d)(1), UCMJ.

[55] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[56] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[57] *Healy*, 26 M.J. at 395-97.

*2. Analysis*

Appellant maintains three years' confinement is inappropriately severe "for an offense that did not result in any physical injury and lasted mere seconds in time."[58] We disagree with this anodyne description of the event.

We need only point to Appellant's stipulation of fact. In Appellant's own words, Sgt Juliet had "no reason to know" that the pistol was unloaded and looked "terrified" as it was inserted into her mouth.[59] Appellant put the pistol in her mouth because he was "angry and did not know how to express [his] emotions."[60] He sought to "scare" her with a "deadly weapon."[61]

For placing the pistol in Ms. Juliet's mouth, Appellant was facing a maximum punishment of six years' confinement, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge.[62] But by the terms of his plea agreement, Appellant faced only 24 to 36 months' confinement.[63] Appellant specifically bargained for these parameters and the military judge sentenced him within that range. Having received the benefit of his bargain--to include a reduced limitation on punishment and the withdrawal and conditional dismissal of other serious charges and specifications--he now asks for more. This we decline to give. "[A]lthough not dispositive, when an accused who is represented by competent counsel bargains for a specific sentence, that is strong evidence that the sentence is not inappropriately severe and it will likely not be disturbed on appeal."[64] Reviewing the entirety of the record and giving individualized consideration to both the seriousness of the offense and Appellant's character, we find the sentence in this case is not inappropriately severe.

---

[58] Appellant's Brief at 21.

[59] Pros. Ex. 1 at 10.

[60] Pros. Ex. 1 at 11.

[61] Pros. Ex. 1 at 11.

[62] Appellate Ex. I at 3-4.

[63] Appellate Ex. I at 8.

[64] *United States v. Avellaneda*, 84 M.J. 656, 663 (N-M. Ct. Crim. App. 2024).

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[65]

However, we note that the Entry of Judgment (EOJ) does not sufficiently summarize the specifications to which Appellant pleaded guilty or accurately reflect the disposition of the charges and specifications.[66] Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[67] In accordance with R.C.M. 1111(c)(2), we modify the EOJ and direct that it be included in the record.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[65] Articles 59 & 66, UCMJ.

[66] *United States v. Wadaa*, 2024 CCA LEXIS 148, __ M.J. __ (N-M. Ct. Crim. App., April 25, 2024).

[67] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202300141 |
| v. | **ENTRY OF JUDGMENT** |
| **Beto L. VALDEZ, Jr.** **Sergeant (E-5)** **U.S. Marine Corps** *Accused* | *As Modified on Appeal* **26 September 2024** |

On 14 February 2023, the Accused was tried at Marine Corps Base Camp Pendleton, California, by a general court-martial, consisting of a military judge sitting alone. Military Judge Andrea C. Goode presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification 1:** **Between on or about 1 March 2022 and on or about 31 March 2022, commit a violent offense against an intimate partner.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification 2:** **On or about 15 April 2022, commit a violent offense against an intimate partner.**

*Plea:* Guilty except for the words "(b) pushing the head of Sergeant H.M.J. with the hands of the Accused."

*Finding:* Guilty except for the words "(b) pushing the head of Sergeant H.M.J. with the hands of the Accused."

**Specification 3:** **Between on or about 15 April 2022 and on or about 18 April 2022, on divers occasions, commit a violent offense against an intimate partner.**

*Plea:* Not Guilty.

*Finding:* Withdrawn.

**Specification 4:** **Between on or about 15 April 2022 and on or about 19 June 2022, commit a violent offense against an intimate partner.**

*Plea:* Guilty.

*Finding:* Guilty

**Charge II:** **Violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920.**

*Plea:* Not Guilty.

*Finding:* Withdrawn.

**Specification:** **Between on or about 15 April 2022 and on or about 18 April 2022, commit sexual assault by placing the person in fear.**

*Plea:* Not Guilty.

*Finding:* Withdrawn.

## SENTENCE

On 14 February 2023, a military judge sentenced the Accused to the following:

**Reduction to pay grade E-1.**

**Confinement for a total of three years.**

> *Specification 1: confinement for two years.*

> *Specification 2: confinement for two years.*

> *Specification 4: confinement for three years.*

*Confinement will run concurrently.*

*Appellant received 137 days of pretrial confinement credit.*

**Dishonorable Discharge.**

FOR THE COURT:

*Mark K. Jamison*

MARK K. JAMISON
Clerk of Court