# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––––

### No. ACM 40649 (f rev)

––––––––––––––––––––

### UNITED STATES
*Appellee*

**v.**

### Gavin D. TURTU
Senior Airman (E-4), U.S. Air Force, *Appellant*

––––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary
*Upon Further Review*

Decided 14 January 2026

––––––––––––––––––––

*Military Judge*: David M. Cisek (trial); Tiny L. Bowman (remand).

*Sentence*: Sentence adjudged 2 April 2024 by GCM convened at Little Rock Air Force Base, Arkansas. Sentence entered by military judge on 19 July 2024: Dishonorable discharge, confinement for 24 months, and reduction to E-1.

*For Appellant*: Major Jordan L. Grande, USAF; Frank J. Spinner, Esquire; Dwight H. Sullivan, Esquire.

*For Appellee*: Colonel G. Matt Osborn, USAF; Colonel Matthew Talcott, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Regina Henenlotter, USAF; Major Jocelyn Q. Wright, USAF; Captain Catherine D. Mumford, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RAMÍREZ, and KEARLEY, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Chief Judge JOHNSON and Judge KEARLEY joined.

––––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

RAMÍREZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of four specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 24 months, and reduction to the grade of E-1.[2] The convening authority took no action on the findings, but granted deferment and waiver of automatic forfeitures.

Appellant raises two issues on appeal, which we have rephrased: (1) whether the sentence is inappropriately severe, and (2) whether there is any unreasonable delay warranting appropriate sentencing relief pursuant to Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2).

As discussed below, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered the Air Force in 2016. At the time of his offenses, Appellant was stationed at Little Rock Air Force Base (AFB), Arkansas. By the winter of 2022, he was married with three children. His eldest, a son, was born on 13 June 2021. Appellant and his wife then had twin girls, born on 24 November 2022. However, the girls were born at 36 weeks of gestational age.

Less than a month after the girls were born, Appellant and his wife traveled from Arkansas to Kansas to spend the holidays with family from 16 December 2022 to 26 December 2022. During this trip, Appellant became frustrated multiple times. His frustration manifested in various ways. On at least one occasion Appellant smothered the twins' faces into his shoulder or aggressively patted their backs while they cried. On another occasion, when one of the twins resisted being fed from her bottle, Appellant used his hands to forcibly restrain her head. Appellant would also carry the newborn girls under his arm like footballs, stacking them on top of each other.

On multiple occasions during the charged time frame, while Appellant was changing the twins' diapers, he used excessive or unreasonable force. By way of example, Appellant would grab the infant by the ribs, hold her down, and

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was credited with six days of pretrial confinement.

squeeze her ribs to the point at which the infant child would be unable to move. This conduct resulted in Appellant breaking several ribs of each twin girl. However, things got worse.

On the evening of 26 December 2022, when Appellant and his family returned to their home on base, Appellant's wife heard one of the twins crying. She went to where the crying was coming from and when she opened the door, she saw Appellant strike the baby in the face. Appellant's wife immediately called 911. When civilian law enforcement arrived, Appellant admitted to striking that twin that evening. However, he lied about previously injuring the other twin. In reality, Appellant had hit the other twin in the head before that night. He had also broken the ribs of each of the twins by applying significant force on their chests. According to Appellant, the girls weighed "somewhere between four and a half to five pounds" at the time. Appellant was arrested that night.

After Appellant was arrested, the twins were taken to Arkansas Children's Hospital, where they were evaluated by a board-certified child abuse pediatrician. The evaluation found that one of the twin girls had a bruise on her left cheek; a bruise on her right cheek near her ear; anterior/lateral right side rib fractures of ribs 4 and 5; anterior/lateral left side rib fractures of ribs 5 and 6; anterior/lateral left side rib fractures of ribs 6 and 7; and a possible anterior/lateral right side rib fracture of rib 6. During Appellant's providence inquiry, he admitted that he caused all of these injuries.

Appellant further admitted the other twin girl had a bruise on her left cheek; anterior/lateral right side rib fractures of ribs 3, 4, 5, 6, and 7; a possible fracture in rib 8; anterior/lateral left side rib fractures in ribs 3, 4, 5, 6, and 7; lacerations and hematomas on her liver; and a possible adrenal (glands located atop each kidney) hemorrhage. Other physicians confirmed the rib fractures on both girls.

According to medical professionals, neither twin had any medical or genetic condition that would cause or contribute to their injuries. Another doctor provided the opinion that "[r]ib fractures are very highly associated with abusive trauma in otherwise healthy children, given that the significant amount of force needed to produce them far exceeds the forces involved in normal, reasonable handling of an infant." Additionally, "[t]here was no callus formation over any of the rib fractures, and therefore these fractures were likely no more than a week to ten days old at the most." As to the liver laceration, the same doctor opined that "a single, violent strike to the abdomen" was the most likely cause.

Appellant was then charged with five specifications of domestic violence of his twin daughters. As part of a plea agreement, he pleaded guilty to four of

the specifications associated with the breaking of the ribs and the striking of each twin girl's head, with the remaining specification concerning the liver laceration withdrawn and dismissed with prejudice.

## II. DISCUSSION

### A. Sentence Severity

#### 1. Additional Background

Appellant pleaded guilty pursuant to a plea agreement. The agreement provided that (1) for each specification to which Appellant pleaded guilty he would receive a term of confinement between 6 and 24 months; (2) the confinement for each specification would run concurrently with each other specification; and (3) the military judge was required to adjudge at least a bad-conduct discharge, but a dishonorable discharge was authorized.

During the presentencing portion of the court-martial, the Prosecution called a doctor who was a professor of pediatrics at the University of Arkansas for Medical Sciences and the associate director of the Team for Children at Risk at Arkansas Children's Hospital. She was qualified as an expert in the fields of general pediatrics and child abuse pediatrics. However, she also testified as a fact witness, as she treated both of Appellant's victims. The doctor explained that

> it requires an excessive and violent degree of force to break infant ribs. It's not at all easy to do. So these are injuries that have resulted from a high-force event. And it's so difficult to break infant ribs that we do not see rib fractures in minor accidents that infants this young can sustain.

She also discussed the trauma the girls went through as a result of their injuries. The doctor concluded that "any child who has a diagnosis of physical abuse in infancy is at elevated risk of future developmental delays and adverse psychological outcomes . . . ."

Appellant called his squadron commander from Little Rock AFB to testify. The commander informed the military judge that there were no significant adverse impacts on the unit directly and immediately resulting from Appellant's crimes. He also opined that Appellant could be rehabilitated. Appellant also called his wife, who said that by the time of the court-martial, she trusted him with the children again, although she did admit to filing for divorce. Finally, Appellant submitted two letters. One was labeled "psychological treatment summary and response" from a "licensed psychologist." The other letter was an affidavit from a clinical and forensic psychologist. In the treatment summary and response, the licensed psychologist saw Appellant post-criminal conduct

and stated Appellant attended all sessions, completed his homework, and "showed tremendous growth during the therapy experience and demonstrated a willingness and ability to help others regulate his emotions." The clinical and forensic psychologist did not see Appellant, but instead reviewed his mental health records. According to the affidavit, Appellant made significant progress in his mental health treatment, post-criminal offense, and this progress "reflects early steps to change which typically are the precursors to a long-term positive prognostic trajectory from a rehabilitative perspective."

After Appellant provided the military judge his unsworn statement, the Prosecution and the Defense made sentencing arguments. Senior trial counsel asked that Appellant be sentenced to 24 months' confinement, reduction to E-1, total forfeiture of pay, and a dishonorable discharge. Trial defense counsel asked the military judge to sentence Appellant to a bad-conduct discharge, "confinement that is significantly lower than 24 months," reduction to E-1, and a reprimand. The military judge sentenced Appellant to a dishonorable discharge, confinement for 24 months for each specification to run concurrently, and reduction to the grade of E-1.

On appeal, Appellant maintains that "where the sentence includes confinement for twenty-four months and reduction to the grade of E-1, a dishonorable discharge rather than a bad-conduct discharge is not 'necessary' to promote justice or to maintain good order and discipline in the armed forces." As such, according to Appellant, his sentence is inappropriately severe. Appellant argues that a dishonorable discharge was not necessary because his victims have physically healed and his crimes did not affect the mission, discipline, or efficiency of the command. Additionally, Appellant contends that "coupled with two years of confinement, a dishonorable discharge rather than a bad-conduct discharge is not 'necessary' to reflect the seriousness of the offenses." Finally, Appellant claims that "[t]he portion of the sentence providing for a dishonorable discharge rather than a bad-conduct discharge violates Article 56(c)(1)[, UCMJ, 10 U.S.C. § 856(c)(1),] and [Rule for Courts-Martial (R.C.M.)] 1002(f)." As explained below, we disagree.

**2. Law**

This court reviews issues of sentence appropriateness de novo. *United States v. Guinn*, 81 M.J. 195, 199 (C.A.A.F. 2021). We may affirm only so much of the sentence as we find correct in law and fact. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

When we review sentences for appropriateness, we are to ensure that an appellant receives the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This is based on individualized consideration of the specific appellant, including his character as well as the nature and

seriousness of the offense. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). Although this court is empowered to "do justice," and has broad discretion in determining whether a particular sentence is appropriate, it is not authorized to grant mercy. *See Guinn*, 81 M.J. at 201, 203 (citing *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

When conducting our review, we not only consider the appropriateness of the entire sentence, but also "must consider the appropriateness of each segment of a segmented sentence." *United States v. Flores*, 84 M.J 277, 281 (C.A.A.F. 2024). Additionally, a sentence within the range of a plea agreement may still be inappropriately severe. This is because our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). As such, we may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. *Id.*; Article 66(d)(1), UCMJ.

R.C.M. 1002(a) provides,

> [T]he sentence to be adjudged is a matter within the discretion of the court-martial. A court-martial may adjudge any punishment authorized in [the Manual for Courts-Martial] in order to achieve the purposes of sentencing under [R.C.M. 1002(f)], including the maximum punishment or any lesser punishment, or may adjudge a sentence of no punishment . . . ,

unless limited by a mandatory minimum punishment or plea agreement.

R.C.M. 1002(f) explains "the court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the United States Armed Forces . . . ."

R.C.M. 1003(b)(8)(C) describes the purpose of a bad-conduct discharge as "a punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature." On the other hand, R.C.M. 1003(b)(8)(B) provides that a dishonorable discharge is for "those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized in civilian jurisdictions as felonies, or of offenses of a military nature requiring severe punishment . . . ."

### 3. Analysis

After individualized consideration of Appellant, including his character as well as the nature and seriousness of the offenses, we do not find 24 months confinement and a dishonorable discharge inappropriate, even when coupled

with the unchallenged reduction in rank. As the medical doctor explained to the military judge, "[I]t requires an excessive and violent degree of force to break infant ribs. It's not at all easy to do." The injuries that Appellant's two infant daughters sustained "resulted from a high-force event." Further, Appellant struck both of his daughters in the head and face area. To put things into perspective, Appellant was a big man according to the photos in evidence, while his twin infants were only about a month old, were born prematurely, and weighed only a few pounds at the time of his offenses. They were the most vulnerable of victims. They could not run away. They could not speak to call for help. They could not avoid Appellant's horrific violence.

The nature and circumstances of the domestic violence offenses are recognized in civilian jurisdictions, and Arkansas specifically, as a felony. *See* AR Code § 5-26-306. The impact on the victims is also real. While Appellant's wife testified that their daughters had healed, the doctor made it clear that "any child who has a diagnosis of physical abuse in infancy is at elevated risk of future developmental delays and adverse psychological outcomes." We have also considered that Appellant's commander testified that there were no significant adverse impacts on the unit directly and immediately resulting from Appellant's crimes.

Additionally, we find that the 24 months of confinement, the reduction in rank, and the dishonorable discharge were not inappropriate to promote respect for the law; provide just punishment for the offense; and promote adequate deterrence of misconduct. We do not find the 24 months of confinement inappropriate to protect others from further crimes by Appellant and to rehabilitate Appellant. Therefore, we grant no relief.

## B. Post-Trial Delay

### 1. Additional Background

Appellant was sentenced on 2 April 2024. The record of trial was docketed with this court approximately four months later, on 29 July 2024. Appellant, through counsel, requested, and was granted, eight enlargements of time in which to file his assignments of error, opposed by the Government, totaling approximately 319 days.

On 22 May 2025, Appellant moved this court "to compel the Government to to produce complete working copies of Attachments 4 and 9 of Prosecution Exhibit 1," an audio recorded pretext phone call between Appellant and his wife, and body camera footage of the police officer who responded to Appellant's wife's 911 call. The discs provided with the record of trial were not functional. However, on 30 June 2025, we ordered the case be remanded for correction in accordance with the provisions of R.C.M. 1112; the Government complied, and the case was re-docketed on 15 August 2025. Appellant then filed his brief on

14 October 2025, the Government filed its answer on 13 November 2025, and Appellant submitted his reply brief on 19 November 2025.

Appellant requests we set aside his dishonorable discharge, pursuant to Article 66(d)(2), UCMJ, because of post-trial delay by the Government for failing in its responsibilities in ensuring complete and operable versions of Attachments 4 and 9 to Prosecution Exhibit 1 when preparing the record of trial. Appellant's position is twofold. First, he claims that because a remand was required, this constitutes "unreasonable delay." Second, he argues that the "Government" has a practice of providing incomplete records of trial to this court, and this should be sufficient to provide relief. As we explain below, we do not find unreasonable delay.

### 2. Law

Those seeking redress stemming from courts-martial convictions have a due process right to timely review and appeal of their cases. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Whether an appellant is entitled to relief for post-trial delay is an issue we review de novo. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

In *Moreno*, the United States Court of Appeals for the Armed Forces identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. at 141–43. Specifically, *Moreno* established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the service court within 30 days of the convening authority's action, or (3) the service court did not render a decision within 18 months of docketing. *Id.* at 142.

In *Livak*, we recognized that "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at 633. Accordingly, we established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. *Id.* (citation omitted).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *See also Moreno*, 63 M.J. at 135 (citations omitted) (holding that "[w]hile *Barker* addressed speedy trial issues in a pretrial . . . context, its four factor analysis has been broadly adopted for reviewing post-trial delay due process claims").

In *Barker*, the United States Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely

post-trial review, which was explained in *Moreno*: (1) oppressive incarceration; (2) "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 138–40 (citations omitted). "Of these, the most serious is the last [type], because the inability of a defendant adequately [to] prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record." *United States v. Valentin-Andino*, 85 M.J. 361, 364 (C.A.A.F. 2025) (citing Article 66(d)(2), UCMJ). If we conclude "relief is warranted for excessive post-trial delay under Article 66(d)(2), [UCMJ,] that relief must be 'appropriate,' meaning it must be suitable considering the facts and circumstances surrounding that case." *Id.* at 367. However, we are not required to provide relief that is "objectively meaningful," nor are we required to explain our reasoning regarding the relief we do provide. *Id.*

### 3. Analysis

From the date Appellant was sentenced to the original docketing of his case, 118 days had passed—32 days less than the 150-day *Livak* standard. Even after docketing, the court granted Appellant eight enlargements of time—totaling approximately 319 days—and then ordering the case be remanded for correction of the record—resulting in another 46 days to pass—Appellant still filed his brief and this court issued its opinion within 18 months from the original docketing date as recognized in *Moreno*, 63 M.J. at 142.

While Appellant does not allege facially unreasonable delay, upon review of the matter, we do not find Appellant suffered any cognizable prejudice from the delay as described in *Barker*. Appellant was not subject to oppressive incarceration, as we found his sentence legally appropriate. There is no evidence, nor does Appellant allege, that he suffered particularized anxiety or concern related to the delay. In addition, any delay in this case did not harm Appellant's ability to present an appeal, especially given Appellant's many requests for enlargements of time in filing his appellate brief. Finally, absent a finding of prejudice to Appellant under the fourth *Barker* factor, Appellant is not entitled to relief for a due process violation because we find that the delay was not

so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

Appellant, however, does cite ten "cases in which this [c]ourt was compelled to remand a record for correction during Fiscal Year 2025." We are not persuaded that those cases are relevant to the analysis of this case. Considering all the factors, we simply cannot find "excessive" delay in the processing of this court-martial record after the judgment was entered into the record, which would warrant relief under Article 66(d)(2), UCMJ.

### III. CONCLUSION

The findings as entered are correct in law. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). *Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court